## 10450

### STATE v. KELLY.

#### (103 S. E. 511.)

1. CRIMINAL LAW—EVIL THOUGHTS ALONE ARE NOT CRIMINAL.—Evil
   thoughts are not criminal, where no act is taken to put them in force.

2. RAPE—ASSAULT WITH INTENT TO RAVISH HELD NOT SUSTAINED.—In
   a prosecution for assault with intent to ravish, evidence *held* wholly
   insufficient to sustain the conviction; the prosecuting witness merely
   testifying that accused, a negro, placed his hand on hers.

Before SEASE, J., Spartanburg, July, 1919. Reversed.

Will Kelly indicted for assault with intent to ravish.
From conviction, defendant appeals.

The testimony of the prosecuting witness follows:

Q. Where do you live, Lucy? A. Cowpens. Q. Whose
daughter, whose daughter are you? A. Mr. John ——'s.
Q. How far do you live from this church? A. I don't know,
sir. Q. About how far? A. I don't know. Q. Is it pretty
close? A. No, sir. Q. Had you been going down there
where Kelly is? A. Yes, sir. I had been down there before
this 28th day of June, once before. Q. What did you go
down there for? A. Just went down there. Q. Did Kelly

tell you to come down there? A. No, sir. Q. Did you go by yourself or with the other children that time? A. Yes, sir. Q. On the 28th day of June, when Mr. Potter and Mr. Turner came down there who was in the church besides you and Will Kelly? A. Nobody else. Q. When you went down there, did the other children go with you? A. Yes, sir. Q. Are they older or younger than you? A. They are younger than I am. Q. Did they go away after you got down there? A. Went down to Mr. McGraw's. Kelly sent them. Q. Did he give them anything? A. Dime. Q. You stayed there after the other children did get back? A. Yes, sir. Q. While they were gone, did Kelly say anything to you? A. No, sir. Q. What did Kelly do? Did Kelly put his hands on you? A. Put his hand on my hand. Q. Which one? A. This one. Q. How did he put his hand on yours? A. Just done this way. He asked me if I wanted my watch bracelet swapped. He was setting my watch. He was setting it when they came. Q. In what part of the church were you located when they came? A. The little room. Q. Where was he? A. He was in the little room fixing up the books. I left my hat on the little table where they read. Q. You said that he put his hand on yours and was setting your watch, and asked you if you wanted to swap your watch bracelet—that was in the little room, while the other children were gone, and just before they returned. Did he say anything else to you? A. No, sir. Q. Did he do anything else to you? A. No, sir. Q. What did you go down there for? A. Went down there to get our nickels. He told us he would give us some nickels. Q. Whom did he tell that— to come down and get the nickels? A. Told it to all of us.

*Mr. C. P. Sims,* for appellant, cites: *The facts in this case distinguished it from the facts in the cases cited, which are the leading cases in this State, and the evidence here is insufficient to sustain a conviction:* 84 S. C. 45; 103 S. C. 481; 85 S. C. 45; 87 S. E. 1004.

23—S. C. 114

*Mr. I. C. Blackwood, Solicitor,* for respondent. Oral argument.

June 28, 1920.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The appeal is from a verdict of judgment of the Court of Sessions. The indictment is for assault with intent to ravish. The verdict was guilty with recommendation to mercy; and the judgment was 10 years service on the public works. The defendant is a negro aged 64 years; and the white female alleged to have been assaulted was at the instant 13 years of age. The appeal makes the single and naked issue that there is no evidence to support the verdict. And that is true.

The Court relied on *State v. Johnson* to be found in 84 S. C. 45, 65 S. E. 1023, but the circumstances of that case differ from those in the case at bar, and the facts breed the law.

The defendant here was at the instant sexton of the church in which the crime is charged to have been committed, and had resided in the community 24 years, and in his whole life theretofore there had been no criminal charge brought against him. The only testimony which touches the event is that of the female child alleged to have been assaulted. Let all of it be reported, with the omission of the child's surname and that of her father.

It is true that from the beginning and until now "every imagination of the thoughts of his (man's) heart was only evil continually." But when a man is charged with evil thoughts ripened into action, his fellow triers cannot rest judgment on their knowledge of original sin inherent in the prisoner, else none of us would escape judgment. The evil thought, which is the criminal intent, only becomes unlawful when he who harbors it proceeds to put it into action. The

single act of the defendant, testified to by the female child, does not tend to prove that when he put his hand on her hand he intended to ravish her. To so hold would hurt the law more than it would hurt the defendant.

The judgment is reversed, with direction to enter verdict of not guilty.