STATE OF NORTH CAROLINA v. DAVID DOWD

No. 755SC668

(Filed 17 December 1975)

1. **Criminal Law § 99— examination of prospective jurors — statement by court**

When defense counsel asked prospective jurors a question containing an inadequate statement of law, the trial court did not commit prejudicial error in stating that counsel's question was inaccurate and in proceeding to correct the error.

---

State v. Dowd

---

2. **Robbery § 1— attempted armed robbery**

An attempt to rob another of personal property with the use of a dangerous weapon whereby the life of the person is endangered or threatened is, itself, a completed crime and is punishable to the same extent as if the property had been taken as intended. G.S. 14-87.

3. **Criminal Law § 3— attempt defined**

In order to constitute an attempt, it is essential that the defendant, with the intent of committing the particular crime, should have done some overt act adapted to, approximating, and which in the ordinary and likely course of things would result in, the commission thereof.

4. **Robbery § 4— armed robbery — guilt as principal — sufficiency of evidence**

The State's evidence was sufficient for the jury to find that defendant was a principal in the offenses of armed robbery and felonious assault where it tended to show that defendant and his three companions discussed robbing a convenience store, defendant entered the store to check on the clerk, when defendant left the store one of his companions entered the store and shot the clerk, and the other two companions then entered the store for the purpose of taking the money but became scared and ran from the store without doing so.

APPEAL by defendant from *Fountain, Judge.* Judgment entered 11 April 1975 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 18 November 1975.

Defendant was charged with armed robbery and assault with a deadly weapon with intent to kill, inflicting serious injury not resulting in death. Upon arraignment he entered a plea of not guilty to both charges. He was found guilty as charged in both charges and was sentenced to prison for a term of years on each charge, sentences to run concurrently.

The evidence for the State tended to show the following:

James Kally Quillan was an employee at the Zip Mart on 25 January 1975. He was alone at the time someone entered and shot him four times. He fell to the floor, triggered the burglar alarm and picked up a firearm. Just prior to the shooting Quillan had used the phone to call his residence and request that coffee be brought to him so that he could stay awake. The first bullet struck under Quillan's ear, went through his lower jaw, and lodged behind his left ear. This bullet has not been removed surgically due to the danger of loss of hearing in the left ear. The second bullet entered above the right eye, and lodged in the left eye, necessitating the removal of the entire left eye, and the use of a glass eye. The third bullet hit the

right arm and made a scar and the fourth shot caused a superficial wound on the left side.

Linell Josey, age 15, testified for the State and stated that he and defendant David Dowd, Nathaniel Scott, and Donald Frazier discussed robbing the Zip Mart. They had a .25 caliber automatic pistol which had been shown to defendant prior to their going to the Mart. When they arrived at the store they saw Quillan making a phone call and defendant Dowd was instructed to go inside and learn what he could about the call. Dowd went inside the store and walked around like he was going to buy something, and he came back out and reported that the man called his wife to bring him some coffee. The plan called for Josey to shoot Quillan and for Scott and Frazier to run in and get the money. He further testified:

"I don't think the man knew any of us. Seems like I recall that there was a conversation about him being able to identify us. I believe someone said, 'Well, the man in the Zip Mart, if you go in there and you just hold him up, he will go down there and identify you, to testify you give him some trouble;' and somebody said the best thing to do is go in there and shoot the man, because if you shoot him, he can't testify against you.

When I went into the Zip Market, I think David Dowd was by the Zip Mart or, you know, close near the Zip Mart. I can't really recall where he was at.

. . .

I went into the Zip Mart and shot the man. I don't know where I shot him. I shot him about three times. When I shot him, I guess he was putting up cigarettes with his back to me. He never saw me that I can recall."

Nathaniel Scott testified for the State. His testimony tended to corroborate Josey's testimony and added that Scott and Frazier ran into the store after the shooting, saw Quillan on the floor, got scared and ran out of the store without taking any money. He confirmed that Dowd assisted in the planning and the preparation for the robbery.

The court conducted a voir dire to determine the admissibility of defendant's statement and thereafter made findings of fact. Detective Simpson testified that Dowd signed a waiver of his rights, stated that he and the other three boys discussed

State v. Dowd

robbing the Zip Mart, and admitted going into the store. Simpson further testified that Dowd told him that Josey entered the store as he was walking out of it, and that he heard shots being fired as he reached the parking lot. Officer Brown corroborated the evidence which indicated that Dowd's function in the robbery was to see who was in the store before Josey went in to shoot the clerk.

The defendant, age 15, testified that he did not speak with the three boys about robbing the Zip Mart. He stated that he went to the store on his own and bought a coke, that he saw Frazier and Scott across the street from the market, and that Josey passed him without speaking. He further testified that he returned to the pool hall and saw Linell Josey and a lot of his friends there. He denied knowledge of a shooting.

*Attorney General Edmisten, by Associate Attorney Cynthia Jean Zeliff, for the State.*

*Charles E. Sweeny, Jr., for defendant appellant.*

MARTIN, Judge.

[1] The defendant contends by his first assignment of error that he was prejudiced because of the trial judge's remarks made during defense counsel's questioning of prospective jurors. The court stated that one of the defense counsel's questions was not accurate, and then proceeded to correct the error.

The defendant cited *State v. Holden,* 280 N.C. 426, 185 S.E. 2d 889 (1972), which states that remarks by the judge which tend to belittle counsel or which suggest that counsel is not acting in good faith, may cause the jury to disbelieve all evidence adduced in defendant's behalf. The judge in that instance had told the defense counsel to ask proper questions. The Supreme Court stated that this remark was indiscreet and improper, but that the totality of circumsances showed that it was harmless error.

The defendant contends that the judge's comment affected the jury, citing the incident of juror Delag's request to be excused from jury duty. Ms. Delag stated that she thought some of the defense counsel's questions were unnecessary. The record indicates that the juror's request was not prompted by the judge's remarks.

The trial judge is empowered and authorized to regulate and referee the selection of the jury to the end that both defendant and the State receive the benefit of a trial by a fair and impartial jury. *State v. Vinson,* 287 N.C. 326, 215 S.E. 2d 60 (1975). Counsel for defendant posed a question to the jury containing an inadequate statement of law and it was the court's duty to make a correction. Counsel's questions should be limited to material and relevant matters relating to the qualification or disqualification of the jurors. They should not anticipate the instructions of the court and demand reaction thereto.

In *State v. Vinson, supra,* Justice Huskins, speaking for the Court, stated:

"On the voir dire examination of prospective jurors, hypothetical questions so phrased as to be ambiguous and confusing or containing incorrect or inadequate statements of the law are improper and should not be allowed. Counsel may not pose hypothetical questions designed to elicit in advance what the juror's decision will be under a certain state of the evidence or upon a given state of facts. In the first place, such questions are confusing to the average juror who at that stage of the trial has heard no evidence and has not been instructed on the applicable law. More importantly, such questions tend to 'stake out' the juror and cause him to pledge himself to a future course of action. This the law neither contemplates nor permits. The court should not permit counsel to question prospective jurors as to the kind of verdict they would render, or how they would be inclined to vote, under a given state of facts."

This assignment of error is overruled.

Defendant next assigns error to the admission into evidence of statements which defendant made to Officer Simpson. After conducting a voir dire hearing, the trial court concluded that "At the time the defendant made such statements, if any, as were made to Officer Simpson, he did so freely, voluntarily, knowingly and understandingly." The record reveals that competent evidence supported these findings, and they in turn supported the court's conclusions. This assignment of error is overruled.

Defendant assigns as error the failure of the court to allow him timely made motions for nonsuit.

State v. Dowd

In considering a trial court's denial of a motion for judgment of nonsuit, the evidence for the State, considered in the light most favorable to it, is deemed to be true and inconsistencies or contradictions therein are disregarded. Evidence of the defendant which is favorable to the State is considered, but his evidence in conflict with that of the State is not considered upon such motion. *State v. Price,* 280 N.C. 154, 184 S.E. 2d 866 (1971). The question for the court is whether, when the evidence is so considered, there is reasonable basis upon which the jury might find that an offense charged in the indictment has been committed and the defendant was a principal in the commission of the crime.

[2, 3]  By the terms of G.S. 14-87 an attempt to rob another of personal property, made with the use of a dangerous weapon, whereby the life of a person is endangered or threatened, is, itself, a completed crime and is punishable to the same extent as if the property had been taken as intended. *State v. Price, supra; State v. Spratt,* 265 N.C. 524, 144 S.E. 2d 569 (1965). Such attempt occurs when the defendant, with the requisite intent to rob, does some overt act calculated and designed to bring about the robbery, thereby endangering or threatening the life of a person. *State v. Price, supra; State v. Spratt, supra.* In order to constitute an attempt, it is essential that the defendant, with the intent of committing the particular crime, should have done some overt act adapted to, approximating, and which in the ordinary and likely course of things would result in the commission thereof. Therefore, the act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory. In other words, while it need not be the last proximate act to the consummation of the offense attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made. *State v. Price, supra.*

Considered in accordance with the above stated principles, the evidence in the record is amply sufficient to justify a jury in finding that Linell Josey entered the market with the intent to rob Quillan, shot him three times in the head with a pistol, intending to kill him and inflicting serious injury, for the purpose of accomplishing the intended robbery and thereby endangered his life. Thus, the evidence of the State was suffi-

cient to show that the offenses charged in the bills of indictment were committed.

**[4]** The remaining question is whether the evidence is sufficient to show that the defendant was a principal in the commission of each offense. All who are present at the place of a crime and are either aiding, abetting, assisting, or advising in its commission, or are present for such purpose to the knowledge of the actual perpetrator, are principals and equally guilty. *State v. Dawson,* 281 N.C. 645, 190 S.E. 2d 196 (1972). A person aids when, being present at the time and place, he does some act to render aid to the actual perpetrator of the crime though he takes no direct share in its commission; and an abettor is one who gives aid and comfort, or either commands, advises, instigates or encourages, another to commit a crime. *State v. Holland,* 234 N.C. 354, 67 S.E. 2d 272 (1951). By its express terms G.S. 14-87 extends to one who aids and abets in an attempt to commit armed robbery.

The State's evidence, considered as above stated, is ample to support a finding by a jury that the defendant aided and abetted Linell Josey in feloniously assaulting and attempting to rob James Kally Quillan so as to become a principal in the second degree and equally liable with the actual perpetrator. The motion for judgment of nonsuit was, therefore, properly denied.

We have carefully examined defendant's remaining assignments of error and find them to be without merit. Defendant had a fair trial, free from prejudicial errors.

No error.

Judges VAUGHN and CLARK concur.