23385

The STATE, Respondent v. Joseph P. RALLO, Appellant.

(403 S.E. (2d) 653)

Supreme Court

*Chief Atty. David I. Bruck* and *Deputy Chief Atty. Elizabeth C. Fullwood, South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Atty. Gen. Harold M. Coombs, Jr., Staff Atty. Miller W. Shealy, Jr., Sol. James C. Anders,* Columbia, *for respondent.*

Heard Oct. 18, 1989.

Decided April 22, 1991.

FINNEY, Justice:

Appellant Joseph P. Rallo was convicted of attempted criminal sexual conduct with a minor in the second degree and sentenced to ten years imprisonment. We reverse and remand for a new trial.

Appellant contents the trial court erred in charging the jury that it could find that the offense occurred on or about February 14. Appellant alleges the trial court's error abridged his right to a fair trial and was a comment on the facts, in violation of Article V, § 21, of the South Carolina Constitution.

The pertinent portion of appellant's original indictment states as follows:

> ... That Joe Rallo did in Richland County on or about January ... attempt to engage in sexual battery, to wit: by attempting to coerce the victim into performing fellatio upon and with the body of Shane [D.] ... without his consent. Such sexual battery was accomplished by aggravated coercion, the threat of force and violence of a high and aggravated nature ...

Prior to trial, the indictment was amended to allege that the

offense occurred on or about February 14, 1988. After jury selection, the state moved to further amend the indictment by rewording some verbiage. At that time, the solicitor confirmed that he would seek to prove the offense occurred *on* February 14, not on or about February 14. The court granted the motion to amend, but the indictment was not physically altered to reflect striking of the words "on or about" preceding February 14.[1]

During the trial, the victim and another witness testified that the alleged incident occurred on Sunday, February 14, 1988. Appellant defended on the basis of alibi. Through the testimony of two clergymen and the junior warden of the Chapel of the Cross Episcopal Church, the appellant presented evidence that he had been engaged in church activities from 7:00 A.M. until 10:00 P.M. *on February 14.* (Emphasis added.)

The appellant objects to the following portion of the court's jury charge:

> . . . The specific charge in this indictment is attempted criminal sexual conduct with a minor in the second degree. The state alleges that the defendant, Joseph P. Rallo, did in Richland County on or about February 14, 1988, commit this offense. The state is not required to prove that the offense occurred on the exact day of February 14, 1988, but the state is required to prove that the offense occurred on or about February 14, 1988. That is, a reasonable time insofar as February 14, 1988. A reasonable time relationship is the required parameter . . .

Appellant asserts the trial court erred in charging the jury that the state is not required to prove that the offense occurred on the exact day of February 14.

A defendant is entitled to be sufficiently apprised of the offense charged so that he can adequately prepare his defense. *State v. Hardee*, 279 S.C. 409, 413, 308 S.E. (2d) 521, 524 (1983).

While it is true that the State need not prove the exact

---

[1] The relevant portion of the indictment, after amendment, reads as follows:

. . . That Joe Rallo did in Richland County on or about February 14, 1988 attempt to engage in sexual battery, to wit: by attempting to perform fellatio upon and with the body of Shane [D.] . . . said victim being more than eleven but less than fourteen years of age . . .

date set forth in the indictment unless time is an essential element of the offense or is made a part of the description of it . . . the State should not be allowed to prove a different date than that set forth in the indictment where the defendant relies upon the defense of alibi, unless the defendant is held to have had knowledge that the State would attempt to prove a different date upon trial.

*State v. Pierce*, 263 S.C. 23, 27, 207 S.E. (2d) 414, 416 (1974), citation omitted.

Although the indictment in this case was not physically modified, the record shows the state amended the indictment to specify a date certain, February 14, and presented its proof accordingly. Consequently, appellant presented alibi witnesses to prove his whereabouts on February 14. Notwithstanding the amendment and the fact that both the state and the appellant conformed their proof to the specific date of February 14, the trial court's instruction permitted the jury to find that the offense could have occurred on or about February 14.

This Court finds that the indictment was orally amended from on or about February 14 to February 14. The miscue of failing to physically alter the indictment is not dispositive. We hold that, under the circumstances of this case, the trial judge's charge constituted error and deprived the appellant of his right to a fair trial.

Appellant's remaining exceptions are disposed of pursuant to Supreme Court Rule 23.

For the foregoing reasons, this case is reversed and remanded for a new trial.

Reversed and remanded.

GREGORY, C.J., and HARWELL and CHANDLER, JJ., concur.

TOAL, J., dissenting in separate opinion.

TOAL, Justice (dissenting):

I respectfully dissent. I find no flaw in the indictment and would also affirm as to all other issues in this case.

The indictment complained of here involves the alleged attempted fellatio by the defendant upon a twelve year old boy, referred to hereinafter as John.[1] John testified to the following

story.

He and another boy, Alan, age 15, were at the defendant's house (the defendant lived near the boys) watching television. The defendant asked John to step into another room. The defendant then informed John that he was gay, and asked to perform fellatio on him. The defendant offered to give John a ring or a hundred dollars if the boy would acquiesce. The defendant paid John five dollars so that he could watch John grab his own crotch, then the defendant tried to grab John's crotch himself. John refused to allow it, and left with Alan, who witnessed the incident. John also stated that at some point, the defendant showed him a *Penthouse* magazine so that he would get an erection and the defendant could watch.

Alan testified to the following story. While he and John were at the defendant's house, the defendant asked them if they wanted a drink, and gave Alan a beer and John some Kool-Aid. Alan then testified:

> A. . . . [A]nd we were talking about golf, watching golf. And then he started telling [John] he wanted to give him this ring to let him play with him and stuff and have sex with him. Sex with him, and [John] wouldn't do it.
> Q. What was he saying specifically to him?
> A. He was saying he had this ring, he could give it to his girlfriend for Valentine's Day. And [John] said he wasn't going to have sex with him and he was trying to reach for [John] under the table, grab [John] under the table. And then [John]—
>
> \* \* \* \* \* \*
>
> Q. And what, if anything, did [John] do?
> A. [John] backed up.
> Q. Did he say anything to [John]? Specifically what did he say?
> A. He says I'd like to see you get a hard on and he went out, he said he'd be right back, and he came out with a magazine—Penthouse or some kind of playboy magazine—and he put it in front of [John's] face and told him

---

[1] All names included herein are fictitious, and included only for the purpose of preserving the anonymity of the minors involved.

to read this and get a hard on. And [John] pushed it across the table.

After this, Alan claimed that he and John left.

Two other incidents of sexual misconduct by the defendant were also presented at trial. One of these incidents involved a sixteen year old boy, Fred.

Fred testified that he met the defendant at a pay phone at a convenience store. The defendant allegedly offered Fred a cigarette and asked him if he wanted to get drunk sometime. Fred responded "maybe." Fred claims that he next saw the defendant when he was walking near the defendant's home towards a friend's house. He met the defendant, went into the defendant's home, and began drinking beer and liquor. Fred then testified to the following:

Q. Did he make any sexual attempts at you?
A. Yes.
Q. Tell the Court about that.
A. He said—he asked me if he could touch me. Well, if you want his exact words he said, "if I touch you, will you swing out on me?" And I said, yes.

\* \* \* \* \* \*

Q. Did he actually try to touch you?
A. He had his hands on my genitals while he said it. And I said no.
Q. What did you do then?
A. I left.

Fred also testified to the following:

Q. What did you and Joe talk about that night?
A. Different things really. He said things like getting me in the porno movies.
Q. Into what?
A. Porno movies.
Q. What did he say?
A. He said he could get me in them if I wanted to be in them.
Q. What was your response?
A. You know. I thought it was a good idea at first really but then he got into deeper things.
Q. What kind of deeper things?

A. Like porno movies with other guys and recruiting kids from my neighborhood.

Q. What was said about that?

Q. He said he liked kids that didn't have pubic hair. You know, young kids.

The second additional incident presented at trial involved Alan and his brother, Ted, a thirteen year old. Alan, his brother, and another 13 year old boy named Tom allegedly went to the defendant's home to do some odd jobs. Alan and Ted both testified that the defendant offered them alcoholic beverages, and that all three of the boys became intoxicated. Tom and Ted allegedly became physically ill. Alan testified that the defendant asked Tom to come back into the bedroom with him. A little later, Alan and Ted claim that they witnessed Tom performing fellatio on the defendant, while the defendant held the boy's head with his hands. Tom was said to have no pants on at the time. For his part, Tom remembers nothing about that night, except that he was drinking heavily.

The defendant presented several witnesses to support an alibi defense, as the incident was alleged to have been committed on or about February 14, 1988. The defendant's witnesses accounted for the defendant's whereabouts for most of the fourteenth.

## LAW/ANALYSIS

The majority finds as a fact that, after jury selection, "the solicitor confirmed that he would seek to prove the offense occurred *on* February 14, not on or about February 14." (emphasis in the original). *Ante,* — S.C. — at —, 403 S.E. (2d) 653 at 654. The majority further relates as fact "that the indictment was orally amended from on or about February 14 to February 14. The miscue of failing to physically alter the indictment is not dispositive." *Ante,* — S.C. at —, 403 S.E. (2d) at 655. I must, after careful review of the transcript, disagree with the majority's factual finding in this regard.

I set out the following excerpts from the transcript concerning this issue:

THE COURT: All right. Motions and matters of law, counsel. Does the State have anything?

THE STATE: Yes, Your Honor. A motion to amend.

THE COURT: All right. The motion is to amend the indictment. 88-GS40-2296. In what fashion, counsel?

THE STATE: Your Honor, the verbiage on the indictment that Joe P. Rallo did in Richland County on or about February the 14th of 1988 attempt to engage in a sexual battery, to wit: by attempting to coerce the victim into performing fellatio upon the body of [John]. I'd like to amend that indictment, Your Honor.

\* \* \* \* \* \*

THE COURT: Proceed and tell me what it is.

THE STATE: Upon and with the body of [John], said victim being more than eleven but less than fourteen years of age.

THE COURT: Any objection to that, counsel, under 16-3-655, Subsection 2.

\* \* \* \* \* \*

DEFENSE COUNSEL: I think it's just a matter of semantics, Your Honor. It doesn't change the substantive allegations and I have no objection.

\* \* \* \* \* \*

DEFENSE COUNSEL: Your Honor, my client has requested me to ask the Court to amend the indictment to Joseph, not Joe, Rallo.

THE COURT: Is there a middle initial?

DEFENSE COUNSEL: Joseph P.

THE COURT: Joseph P. Rallo

THE STATE: Judge, I thought that was already done.

THE COURT: I have it right in my hand and I don't see it.

THE STATE: There were some additions made yesterday. I wasn't present—not yesterday but earlier concerning a motion to make a more specific date in the indictment.

DEFENSE COUNSEL: That was done a while back when we set the date certain on this trial for last Monday. The allegation was to read that the date that this offense was alleged to have occurred on was February 14, 1988. I thought that was a part of the indictment.

THE STATE: That's correct.

THE COURT: Let me mark it accordingly now. February 14, 1988. Correct, counsel?

DEFENSE COUNSEL: 14, Your Honor.

THE COURT: February 14. We are saying 14 now?

DEFENSE COUNSEL: That was my understanding. You might want to check with Mr. Bilton. My understanding was it was the 14th as we pinned them about it. We had a little hearing about that because I needed to know a specific date and I thought we had agreed upon—

THE STATE: It's my understanding, too, judge. It was Valentine's Day of this year. That was February 14th.

\* \* \* \* \* \*

THE STATE: And again I thought it had already been changed. I have it marked on this indictment but Joseph P. Rallo is his name, Your Honor.

THE COURT: All right. Anything else insofar as the indictment?

THE STATE: Nothing so far as the indictment, Your Honor.

After the trial, the judge charged the jury, in pertinent part, as follows:

> The specific charge in this indictment is attempted criminal sexual conduct with a minor in the second degree. The state alleges that the defendant, Joseph P. Rallo, did in Richland County on or about February 14, 1988, commit this offense. The state is not required to prove that the offense occurred on the exact date of February 14, 1988, but the state is required to prove that the offense occurred on or about February 14, 1988. That is, a reasonable time insofar as February 14, 1988. A reasonable time relationship is the required parameter.

The following next occurred:

DEFENSE COUNSEL: Yes, Your Honor. With all due respect and for the record, I make an exception to your charge with respect to the indictment concerning the date of the alleged offense. You told the jury that they were not required to find that it occurred on February 14th.

THE COURT: And that is correct.

DEFENSE COUNSEL: Yes, Your Honor. I think that would be more properly correct if the witness himself had hedged or was unsure about the date but the victim himself gave a specific date of the 14th and that's the date we were relying on and for the record I make that exception to your charge.

The indictment itself consists of a pre-printed form which has blanks in it to accommodate such information as the county in which the alleged offense occurred; the name of the alleged offender; and, most importantly here, the date of the alleged offense. Pertaining to the date of the offense, the form contains the pre-printed words "on or about," followed by a blank. Originally, the word "January" was typed into the blank. As can clearly be seen by examining the indictment which is photocopied in the Transcript of Record, the word "January" was struck through on the blank, and the words "February 14, 1988" took its place. The pre-printed form language of "on or about" was never struck through, despite the fact that the trial judge struck through other portions of the pre-printed language.

An examination of the transcript in my opinion supports the view that this was the only amendment made and asked for regarding the date of the alleged offense. No one asked that the words "on or about" be stricken from the indictment, and no one has argued at trial or on appeal that the "on or about" language was not stricken due to a "miscue" by the trial court. In my view, the majority has misconstrued the facts regarding this indictment change. The record supports, in my judgment, only the fact that the words "February 14, 1988" were asked and agreed to be substituted for the word "January" in the blank on the form, so that the indictment then read "on or about February 14, 1988" rather than "on or about January 1988."

I note that the defendant's attorney did not stress any failure to physically alter the indictment after the trial court's charge, but instead argued that, because the victim, in his opinion, "gave a specific date of the 14th," the judge's charge was a comment on the facts. This argument is the only one this Court may address, and thus I shall proceed to address it here.

The defendant's argument, by his own admission, has no force "if the witness himself had hedged or was unsure about the date." (*See* quote, *supra.*) The witness testified as follows:

Q. [John], when was the first time you told anybody about this?
A. It was over at D__'s house I told.
Q. Do you remember what date?
A. No.
Q. Didn't you tell these investigators and the solicitor this last time you came up here for this trial that this happened on Valentine's Day?
A. Yeah.
Q. All right. Are you now saying it happened on Valentine's Day?
A. I guess so, yes.
Q. You don't remember the date?
A. Not exactly.
Q. But you think it was Valentine's Day?
A. Uh-huh (indicates affirmative).
Q. And I believe you told the investigators that was because Mr. Rallo said something to you about giving the jewelry to your girl friend for Valentine's Day?
A. Yeah.
Q. That's how ya'll were able to remember what date you said this happened on. Right?
Q. Uh-huh (indicates affirmative).
Q. So, are you now saying it happened on Valentine's Day?
A. Yes.
Q. But initially you told the police that it happened in January, didn't you?
A. Uh-huh (indicates affirmative).
Q. And Valentine's Day isn't in January. It's in February.
A. Yes.
Q. So, you weren't telling the truth to the police when you told them the first time that it happened in January?
A. I was telling the truth, I was just didn't know which month or week or day it was.

The trial court was merely charging the jury from the indictment which stated that the offense occurred *"on or about"*

February 14, 1988. On the basis of the testimony, the jury could have been convinced that John, a 13 year old, was confused about the specific date involved, and that the defendant committed the act on a day close to, but other than February 14th. I would therefore reject the defendant's argument.

The defendant makes three other arguments for relief, all of which I also would reject. First, the defendant observes in his brief that each of the four principal witnesses for the State had committed prior bad acts involving moral turpitude, and that these bad acts were admitted into evidence. The defendant asserts that he was entitled to a charge from the trial court that the jury could consider the bad acts committed by the State's juvenile witnesses in determining their credibility.

There is no authority of which I am aware, and none cited by the defendant, which makes such an instruction mandatory. The trial court gave a general charge on credibility and told the jury that they should consider whether the testimony of the witnesses was impeached and made weaker by other evidence and testimony. He also instructed them that they could consider anything in the record that would aid and assist them in determining the truth. I would find no error here.

Secondly, the defendant asserts that he was entitled to a directed verdict of acquittal, since the facts presented at trial failed to demonstrate the crime of attempted criminal sexual conduct with a minor. Of course, in ruling on a defendant's motion for a directed verdict or a new trial, the Court must view the evidence in the light most favorable to the State and must deny the motion if there is any evidence, direct or circumstantial, tending to prove the defendant's guilt. *State v. Venters*, 300 S.C. 260, 387 S.E. (2d) 270 (1990).

In order to constitute an attempt to commit a crime, it is essential that, coupled with the intent to commit the offense, there be some overt act, beyond mere preparation, in furtherance of the intent, and there must be an actual or present ability to complete the crime. *See State v. Evans*, 216 S.C. 328, 57 S.E. (2d) 756 (1950). It is clear, in my opinion, that the defendant's acts constituted an attempt under this test. The defendant first indicated to the victim that he wished to perform fellatio on him, and a short time later, the defendant grabbed at the victim's crotch. I would therefore reject the defendant's argument that he was entitled to a directed verdict.

Lastly, the defendant argues that the trial court erred in allowing into evidence the prior bad act testimony of Fred, Alan, and his brother, Ted. Specifically, the defendant complains that the fellatio incident with Tom, as well as the attempted fondling of Fred, were improperly introduced as evidence. I would disagree. In my view, such evidence was properly admitted under the "common scheme" exception to the prohibition against the admission of prior bad act evidence enunciated in *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923). Here, the defendant picked out young, teenage boys for the purpose of having homosexual sex with them. He consistently offered them alcohol in an attempt to make them vulnerable. Furthermore, all of these acts took place within a relatively short period of time. Hence, I would find the prior bad act evidence admissible as part of a common scheme or plan by the defendant to commit acts of sexual misconduct on minor boys. Accordingly, I would affirm the judgment of the lower court.