679 S.E.2d 194

**The STATE, Respondent,**

v.

**Jamey Allen REID, Appellant.**

**No. 4574.**

Court of Appeals of South Carolina.

Heard May 12, 2009.

Decided June 25, 2009.

Rehearing Denied July 22, 2009.

Appellate Defender Katherine H. Hudgins, of Columbia, for Appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General William M. Blitch, Jr., of Columbia; and Solicitor Christina T. Adams, of Anderson, for Respondent.

PIEPER, J.:

Jamey Allen Reid appeals his convictions for attempted criminal sexual conduct (CSC) with a minor second degree and criminal solicitation of a minor. Reid contends the trial court erred in failing to grant a directed verdict of acquittal, arguing the State failed to prove Reid committed an overt act in furtherance of attempted CSC. Reid also claims the trial court erred in refusing to charge criminal solicitation of a minor as a lesser included offense of attempted CSC with a minor second degree. We affirm.

## FACTS

On the night of January 9, 2006, Mark Patterson, a police officer for the Westminster Police Department and the Internet Crimes Against Children Task Force, conducted an undercover investigation on the internet. As part of the operation, Patterson entered a Yahoo chat room under the guise of a fourteen year old female, using the screen name "Skatergurl." Once logged in to the chat room, Patterson waited for requests to chat or to communicate via instant messenger from other individuals in the chat room. Software incorporated into Patterson's computer recorded the communications in real time.

At some point that night, Skatergurl received a message from a person with the screen name "Fine_Ass_Seminoles_Fan," (FASF) asking her where she lived. Skatergurl

responded Oconee County. FASF then inquired of Skater-
gurl as to her name and age. Skatergurl responded with
"Karen" and "fourteen." FASF said his name was Jamey.
Thereafter, the following discussion occurred:

[FASF]: Well, what you looking for? ... Sex, Love, Rela-
tionships, Friends, What?

[Skatergurl]: Laugh out loud. What's everybody looking
for?

[FASF]: I asked. You tell me.

[Skatergurl]: I don't know. Fun stuff.

[FASF]: Sex? Love?

[Skatergurl]: L.O.L., Laugh out loud.

[FASF]: Honestly.

[Skatergurl]: What are you looking for?

[FASF]: Good Girl.

. . . .

[FASF]: You need some loving? I'm asking?

[Skatergurl]: I don't know. Laugh out loud.

[FASF]: I do.

[Skatergurl]: Kewl.

The conversation turned to arranging a meeting place.
FASF asked when and where they could meet. Skatergurl
replied they could only meet at night and suggested Westmin-
ster Middle School. Skatergurl subsequently asked:

[Skatergurl]: Whatcha wanna do?

[FASF]: Go back to my apt.—I assume. Okay?

[Skatergurl]: Do what?

[FASF]: What you want to do. Tell me.

[Skatergurl]: I don't know.

[FASF]: Watch movie, I dunno, talk. Make love.

[Skatergurl]: Make love?

[FASF]: Yes. Wanna [ ] don't mean you have to.

[Skatergurl]: You don't care I am 14?

[FASF]: No. You?

FASF suggested meeting between 2:00 and 2:15 a.m. at the
middle school that night. He told Skatergurl he would arrive
in a black truck or a red car and he confirmed what Skater-

gurl would be wearing. Just before signing out of the chat room, FASF said, "we come here and make love, okay, snuggle, kiss, whatever, okay?" He then asked, "you wanna have sex, honestly," and Skatergurl responded, "I can try."

Officer Patterson called another Westminster police officer and they stationed their vehicles near the middle school. At approximately 2:30 a.m., a red Toyota Celica pulled into the parking lot. The officers stopped the car and arrested the driver, Jamey Allen Reid.

On February 7, 2006, an Oconee County grand jury indicted Reid for attempted CSC with a minor second degree and for criminal solicitation of a minor. A jury trial was held on March 7, 2007. At the close of the State's case, Reid's counsel moved for a directed verdict of acquittal. The court denied the motion. The jury convicted Reid on both charges. The trial court sentenced Reid to twenty years for the attempted CSC with a minor second degree conviction, which was suspended upon the service of ten years with five years probation. Reid was sentenced to ten years for the criminal solicitation of a minor, which was to run concurrently. This appeal followed.

## ISSUES

I.  Did the trial court err in refusing to direct a verdict of acquittal when the State failed to produce sufficient evidence for the charge of attempted CSC with a minor second degree?

II.  Did the trial court err in refusing to find criminal solicitation of a minor was a lesser included offense of attempted CSC with a minor second degree?

## STANDARD OF REVIEW

In criminal cases, appellate courts review errors of law only and are bound by the trial court's factual findings unless they are clearly erroneous. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006).

## DISCUSSION

Reid first argues the trial court erred in refusing to direct a verdict of acquittal because the State failed to demonstrate Reid committed an overt act as required to prove guilt for attempted CSC with a minor second degree. We disagree.

In ruling on a motion for a directed verdict, a trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Weston*, 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006). "A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged." *State v. McCombs*, 368 S.C. 489, 493, 629 S.E.2d 361, 362–63 (2006). "On appeal from the denial of a directed verdict, an appellate court must view the evidence in the light most favorable to the State." *State v. McHoney*, 344 S.C. 85, 97, 544 S.E.2d 30, 36 (2001). "If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find the case was properly submitted to the jury." *State v. Cherry*, 361 S.C. 588, 593–94, 606 S.E.2d 475, 478 (2004).

A person is guilty of CSC with a minor in the second degree if the actor engages in sexual battery with a victim who is fourteen years or less but who is at least eleven years of age. S.C.Code Ann. § 16–3–655(B) (Supp.2005).[1] "A person who commits the common law offense of attempt is punishable as for the principal offense." *State v. Sutton*, 340 S.C. 393, 396 n. 3, 532 S.E.2d 283, 285 n. 3 (2000); *see also*, S.C.Code Ann. § 16–1–80 (2003). Thus, the elements of attempted CSC with a minor in the second degree are: (1) an attempt; (2) to engage in a sexual battery; (3) with a victim; (4) who is fourteen years of age or less; (5) but who is at least eleven years of age. *See* S.C.Code Ann. § 16–3–655(B) (Supp. 2005) (statutory elements of the object crime).

Generally, the mens rea of an attempt crime is one of specific intent such that the act constituting the attempt must be done with the intent to commit that particular crime. *Sutton*, 340 S.C. at 397, 532 S.E.2d at 285. "In the context of

---

1. The statute, as amended, became effective June 1, 2005. Reid was arrested in January 2006.

an attempt crime, specific intent means that the defendant consciously intended the completion of acts comprising the choate offense." *State v. Nesbitt,* 346 S.C. 226, 231, 550 S.E.2d 864, 866 (Ct.App.2001) (internal quotes omitted). The State must prove the defendant's specific intent was accompanied by some overt act, beyond mere preparation, in furtherance of the intent. *Id.; see also, State v. Sosbee,* 371 S.C. 104, 109, 637 S.E.2d 571, 573 (Ct.App.2006) (defining attempt, in a case categorizing criminal sexual conduct with a minor as a "most serious offense," as "an overt act that is done with the intent to commit a crime but that falls short of completing the crime.") (quoting *Black's Law Dictionary* 123 (7th ed.1999)).

Courts have struggled to determine the point at which conduct moves beyond the preparatory stage to the perpetration stage. A competition amongst policy considerations exists in this realm of the law. On the one hand, there exists a policy not to punish or convict innocent persons for evil or criminal thoughts alone;[2] on the other hand, a countervailing policy exists to allow law enforcement to prevent criminal conduct before it reaches the point of completion. South Carolina jurisprudence in the area of attempt law is sparse. Cases in South Carolina do not clearly establish any absolute guiding test for our trial courts to employ in resolution of this issue although *Nesbitt* utilizes the overt act discussion in *State v. Quick,* 199 S.C. 256, 19 S.E.2d 101 (1942), a case not dealing specifically with attempt.

Other state and federal courts have employed a variety of tests, some of which have been used in part or interchangeably by various courts demonstrating the difficulty in defining a universal test. These tests generally are either directed to how much has been done, or instead, how much remains to be done in furtherance of the object crime. Notwithstanding, one rule which does appear consistent throughout the country is the sequence of events need not reach the last proximate act necessary to completion, an original common law test. Wayne R. Lafave, 2 Subst. Crim. L. § 11.4 (2d ed.2008).

---

**2.** *See State v. Evans,* 216 S.C. 328, 333, 57 S.E.2d 756, 758 (1950) ("The law does not concern itself with mere guilty intention, unconnected with any overt act.") (citing *State v. Kelly* 114 S.C. 336, 338, 103 S.E. 511, 512 (1920)). This statement simply reflects that generally a crime includes both an actus reus component and a mens rea component.

Case law additionally suggests varying proximity tests. One test credited to Justice Oliver Wendell Holmes, the common law "dangerous proximity" test, focuses on whether the act comes so close or near to the object crime that the danger of success is very great. *Id.; see* Joshua Dressler, *Understanding Criminal Law* 339 (5th ed.2009). Essentially, this test focuses upon how much remains to be done before the defendant would have succeeded in his goals; often, factors such as the nearness of danger, the substantiality of harm and the apprehension felt are considered. Dressler at 339 (referencing *Commonwealth v. Kennedy*, 170 Mass. 18, 48 N.E. 770 (1897)). Further, the more severe the object crime, the less close the actor must come to completing it in order to be convicted of attempt. *See* Joshua Dressler, *Cases and Materials on Criminal Law* 762–63 (4th ed.2007); *see also People v. Berger*, 131 Cal.App.2d 127, 280 P.2d 136, 138 (1955) (the more clearly the intent to commit the offense is proven, the less proximate the acts need to be to completion); *Van Bell v. State*, 105 Nev. 352, 775 P.2d 1273, 1275 (1989) ("[I]n our review of an 'attempt' offense, we emphasize the inverse relationship which exists between the defendant's intent to commit the crime and the performance of an overt act toward the commission of the crime.").

Similarly, the "physical proximity" test focuses upon whether the defendant's acts "may be said to be physically proximate to the intended crime." Lafave, 2 Subst. Crim. L. § 11.4. This test has been further described as focusing upon an act which amounts to the commencement of the consummation of the object crime or stands "either as the first or some subsequent step in direct movement towards the commission of the offense after preparations are made." *State v. Dowd*, 28 N.C.App. 32, 37, 220 S.E.2d 393, 396 (1975); *see United States v. Mandujano*, 499 F.2d 370, 374 (5th Cir.1974); Dressler, *Understanding Criminal Law* at 398.

Another test, the "substantial step" test, derives from the Model Penal Code and focuses upon whether the defendant has taken a substantial step that strongly corroborates his intent to commit the object crime. Model Penal Code § 5.01. Here, the court looks to what has been done as opposed to what remains to be done. Thus, the drafters of the model code noted that the scope of attempt liability would be broad-

ened consistent with the policy of restraining dangerous persons where the firmness of criminal purpose is shown. Lafave, 2 Subst. Crim. L. § 11.4.[3]

The *Mandujano* court, relying upon the Model Penal Code references to other formulations of various tests, indicated the following additional tests:

(c) The indispensable element test—a variation of the proximity tests which emphasizes any indispensable aspect of the criminal endeavor over which the actor has not yet acquired control.

(d) The probable desistance test—the conduct constitutes an attempt if, in the ordinary and natural course of events, without interruption from an outside source, it will result in the crime intended.

(e) The abnormal step approach—an attempt is a step toward crime which goes beyond the point where the normal citizen would think better of his conduct and desist.

(f) The res ipsa loquitur or unequivocality test—an attempt is committed when the actor's conduct manifests an intent to commit a crime.

499 F.2d at 373 n. 5. Some of these tests bear different labels but are essentially consistent with the above-mentioned discussion. One final test, at least in name, an overt act test, simply suggests any overt or positive act in furtherance of the attempted crime may be sufficient. *See Sosbee,* 371 S.C. at 109, 637 S.E.2d at 573 (dicta); *see also State v. Rallo,* 304 S.C. 258, 269, 403 S.E.2d 653, 659 (1991) (Toal, J., dissenting) ("In order to constitute an attempt to commit a crime, it is essential that, coupled with the intent to commit the offense, there be some overt act, beyond mere preparation, in furtherance of the intent, and there must be an actual or present ability to complete the crime."); David Crump et al., *Criminal Law: Cases, Statutes, and Lawyering Strategies* 537 (2005) (classifying the overt act approach as an actus reus test

3. The United States Fourth Circuit Court of Appeals utilizes the substantial step test. *United States v. Pratt,* 351 F.3d 131, 135–36 (4th Cir.2003). According to Professor Dressler's research, at least 25 states have codified the "substantial step" standard. (Dressler, *Understanding Criminal Law* at 413 n. 190).

wherein "any positive act in furtherance of the attempt is sufficient (a minimal requirement).").

As indicated, we have not found any case in South Carolina specifically indicating how far a person must go before that person may be convicted of attempt to commit a crime. However, our state supreme court has provided some guidance, albeit dicta, in *Quick*, a case not involving the crime of attempt, but subsequently utilized by the court of appeals in *Nesbitt*. *Nesbitt*, 346 S.C. at 231, 550 S.E.2d at 866–67 (quoting *Quick*, 199 S.C. at 259–60, 19 S.E.2d at 102–03). Although the crime of attempt was not at issue in *Quick*, the court nonetheless discussed the distinction between preparations and overt acts, making reference in part to an "attempt to commit." *Quick*, 199 S.C. at 260, 19 S.E.2d at 103. The court indicated "preparation consists in devising or arranging the means or measures necessary for the commission of the crime; the attempt or overt act is the direct movement toward the commission, after the preparations are made." *Id.* at 260, 19 S.E.2d at 103. The court went on to articulate " 'the act' is to be liberally construed, and in numerous cases it is said to be sufficient that the act go far enough toward accomplishment of the crime to amount to the commencement of its consummation." *Id.* at 259, 19 S.E.2d at 102. Further, the court explained, "the act need not be the last proximate step leading to the consummation of the offense." *Id.*

Our sister state, North Carolina, has employed a similar test as that suggested in *Quick*. *Dowd*, 220 S.E.2d at 396. In describing the law of attempt, North Carolina courts have indicated "it is essential that the defendant, with the intent of committing the particular crime, should have done some overt act adapted to, approximating, and which in the ordinary and likely course of things would result in the commission thereof." *Id.* Thus, "the act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation." *Id.* The court further elaborated "while it need not be the last proximate act to the consummation of the offense attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made." *Id.*

Reviewing the facts herein, Reid asked a person whom he thought was a fourteen year old girl if she would meet him within the hour in order to "make love ... snuggle, kiss, whatever." Moreover, the last question Reid asked Skatergurl was, "you wanna have sex, honestly?" This evidence constituted evidence of Reid's specific intent to accomplish CSC with a minor. Having found evidence of the specific intent to commit the underlying offense, we must determine whether the State offered sufficient evidence demonstrating Reid committed some act toward the commission of the crime beyond any act or acts of preparation.

As noted in *Quick*, no definite rule as to what constitutes an overt act for attempt purposes can safely be laid down and each case is dependent upon its particular facts and the inferences which the jury may reasonably draw therefrom, "subject to general principles applied as nearly as can be, with a view to working substantial justice." *Quick*, 199 S.C. at 259, 19 S.E.2d at 102. Moreover, as indicated in *Mandujano*, "it seems equally clear that the semantical distinction between preparation and attempt is one incapable of being formulated in a hard and fast rule." 499 F.2d at 373. As an example, the court noted that "[t]he procuring of the instrument of the crime might be preparation in one factual situation and not in another." *Id.; see United States v. Neal*, 78 F.3d 901, 906 (4th Cir.1996) (suggesting the line between mere preparation and attempt is fact intensive and must be determined on a case by case basis). Thus, once we have determined whether there exists some act separate from an act of preparation, we must also determine whether that act is sufficient to justify an attempt conviction.[4]

We have not found any precedent within our State addressing this specific type of factual situation. However, a signifi-

4. We note, however, there is some authority for the proposition that some acts of preparation may be sufficient for attempt purposes. As Justice Holmes stated, "preparation is not an attempt. But some preparations may amount to an attempt. It is a question of degree." *Commonwealth v. Peaslee*, 177 Mass. 267, 59 N.E. 55, 56 (1901). We need not resolve this issue because we agree with *Mandujano* that this question is merely semantic in nature. 499 F.2d at 373. Notwithstanding, we further note some states have abandoned the "mere preparation" distinction. *See State v. Reeves*, 916 S.W.2d 909 (Tenn.1996).

cant number of other jurisdictions confronted with this issue have concluded that the act of a defendant who travels to a prearranged location with the purpose of having sex with an individual whom he believes is a child is a sufficient act in furtherance of an attempted sex crime. *See, e.g., United States v. Farner,* 251 F.3d 510, 513 (5th Cir.2001) (substantial step test); *State v. Glass,* 139 Idaho 815, 87 P.3d 302, 307 (2003) (applying the "dangerous proximity" test, while using "substantial step" cases in analysis); *People v. Patterson,* 314 Ill.App.3d 962, 248 Ill.Dec. 534, 734 N.E.2d 462, 470 (2000) (using term "overt act" to determine whether a "substantial step" had been made for attempt); *Cook v. State,* 256 S.W.3d 846, 849 (Tex.Ct.App.2008) ("[A]ll the State was required to allege and prove ... was that [defendant] had the intent to commit aggravated sexual assault of a child, and did an act amounting to more than mere preparation, that tended but failed to effect the actual commission of the offense intended."); *State v. Townsend,* 147 Wash.2d 666, 57 P.3d 255, 262 (2002) (en banc) ("[I]t makes no difference that [defendant] could not have completed the crime because 'Amber' did not exist. He is guilty if he *intended* to have sexual intercourse with her.") (emphasis in original).[5]

However, other jurisdictions have held merely arriving at an arranged location is insufficient to constitute a sufficient act in furtherance of a planned sex crime. *See, e.g., State v. Duke,* 709 So.2d 580, 582 (Fla.Ct.App.1998) (holding the State failed to establish an overt act leading to the commission of a sexual battery where the defendant discussed sexual acts with a

---

5. Additional cases and jurisdictions addressing the matter include the following: *United States v. Root,* 296 F.3d 1222, 1227 (11th Cir.2002) (substantial step test); *State v. Sorabella,* 277 Conn. 155, 891 A.2d 897, 915 (2006) (substantial step test); *Dennard v. State,* 243 Ga.App. 868, 534 S.E.2d 182, 188 (2000) (substantial step test); *State v. Risinger,* 40 Kan.App.2d 596, 194 P.3d 52, 54 (2008) ("To be convicted of an attempt crime, a defendant must intentionally take a first step towards committing that crime. Our courts call that step 'performing an overt act.' "); *Commonwealth v. Bell,* 67 Mass.App.Ct. 266, 853 N.E.2d 563, 569–70 (2006) (using overt act language while applying proximity analysis); *State v. Tarbay,* 157 Ohio App.3d 261, 810 N.E.2d 979, 984 (2004) (substantial step test); *see also United States v. Bailey,* 228 F.3d 637, 640 (6th Cir.2000) ("The prosecution must have presented evidence of objective, overt acts that would allow a reasonable jury to find [the defendant] had taken a substantial step. . . .").

person the defendant believed to have been a minor, planned an occasion when he could carry out those acts, and arrived at the prearranged meeting point); *State v. Kemp*, 753 N.E.2d 47, 50–51 (Ind.Ct.App.2001) (finding circumstances of defendant's conduct alleged in the State's information did not reach the level of an overt act showing defendant committed a substantial step toward the offense beyond mere preparation), *superseded in part by statute*, Ind.Code § 35–42–4–6 (West 2004), *as recognized in Aplin v. State*, 889 N.E.2d 882, 885 n. 5 (Ind.Ct.App.2008); *People v. Walter*, 349 Ill.App.3d 142, 284 Ill.Dec. 836, 810 N.E.2d 626 (2004) (finding circumstances of defendant's conduct fell short of demonstrating either actual intent to have sex or a substantial step beyond mere preparation).

Here, based on the evidence presented, Reid completed a requisite act in furtherance of the offense of attempted CSC with a minor second degree. Reid, in preparation, arranged a time and meeting location with a person whom he thought to be a minor. Reid described the type of car he would be driving and he confirmed the description of Skatergurl's clothing. Further, Reid left the location where he was communicating with Skatergurl and committed an act beyond mere preparation in driving to and physically arriving at the prearranged location within fifteen minutes of the agreed upon time.[6] *See Quick*, 199 S.C. at 259, 19 S.E.2d at 102 (noting courts should liberally construe whether an act rose to the level of an overt act in furtherance of crime). Reid's act, for purposes of directed verdict, constituted evidence of the first

---

6. Reid arguably would have been closer to committing the attempted crime had a minor been present upon Reid's arrival. However, this court has previously stressed "[i]t should not be necessary to subject victims to a face-to-face confrontation with a lethal weapon in order to find the essential element of an overt act." *Nesbitt*, 346 S.C. at 234, 550 S.E.2d at 868 (finding sufficient evidence of an overt act warranting the trial court to charge the jury with attempted robbery). Further, while there is no evidence a lethal weapon was present, this type of situation is just as dangerous or potentially injurious to a minor. Therefore, consistent with our state's public policy to protect minors from harm, a minor need not be present in order to prove an act in furtherance of the commission of an attempted sex crime. Early intervention is appropriate in light of the serious nature of this crime.

or some subsequent step in a direct movement towards the commission of the offense after any act or acts of preparation.[7]

Moreover, we give weight to the policy goal of stopping dangerous persons through earlier intervention by law enforcement by punishing the attempted conduct as a crime, especially in any cybermolester type cases where the conduct also clearly manifests or strongly corroborates the intent to commit such a dangerous object crime. Accordingly, the trial court did not err because the evidence was sufficient to withstand Reid's motion for a directed verdict and warranted submission of the case to the jury. *See Cherry,* 361 S.C. at 593–94, 606 S.E.2d at 478 (providing an appellate court must find a case was properly submitted to a jury, if there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused).

▇▇▇ Reid also contends the trial court erred in ruling criminal solicitation of a minor was not a lesser included offense of attempted CSC with a minor second degree. We disagree.

▇▇▇▇ "The test for determining whether a crime is a lesser included offense of the crime charged is whether the greater of the two offenses includes all the elements of the lesser offense." *State v. Northcutt,* 372 S.C. 207, 215, 641 S.E.2d 873, 877 (2007). Absent some special exception, if the lesser offense includes an element not included in the greater offense, then the lesser offense is not included in the greater. *Id.*

As previously indicated, the elements of attempted CSC with a minor in the second degree are: (1) an attempt; (2) to engage in a sexual battery; (3) with a victim; (4) who is fourteen years of age or less; (5) but who is at least eleven years of age. *See* S.C.Code Ann. § 16–3–655(B) (Supp.2005) (statutory elements of the object crime).

---

7. We recognize the significant number of jurisdictions adopting the substantial step test. Many of these states have done so by legislative enactment and this may be a matter worthy of legislative attention. Notwithstanding, even if the South Carolina Supreme Court were to adopt a substantial step test, we find the case herein would meet that test as demonstrated by the case law cited herein.

The elements of criminal solicitation of a minor include: (1) the defendant is eighteen years of age or older; (2) he or she knowingly contacts or communicates with, or attempts to contact or communicate with; (3) a person who is under the age of eighteen, or a person reasonably believed to be under the age of eighteen; (4) for the purpose of or with the intent of persuading, inducing, enticing, or coercing the person to engage or participate in a sexual activity as defined in Section 16–15–375(5) or a violent crime as defined in Section 16–1–60; or (5) with the intent to perform a sexual activity in the presence of the person under the age of eighteen, or person reasonably believed to be under the age of eighteen. S.C.Code Ann. § 16–15–342(A) (Supp.2005).

Here, the trial court did not err in charging separate crimes because the greater offense, attempted CSC with a minor second degree, did not include an element of the lesser offense, which was contacting or attempting to contact an underage person or a person thought to be underage. Given the greater of the two offenses did not include all the elements of the lesser offense, the trial court did not err in refusing to charge criminal solicitation of a minor as a lesser included offense.[8] *See State v. Fristoe,* 135 Ariz. 25, 658 P.2d 825, 831 (1982) (Stating solicitation is not a lesser included offense of attempt. "[T]here are many instances in which oral sexual contact with a minor could be attempted without involving any request or solicitation for the minor to engage in the contact."); *see also State v. Bland,* 318 S.C. 315, 317–18, 457 S.E.2d 611, 613 (1995) (holding where the greater offense did not contain all the elements of the lesser, the court of appeals properly found two separate crimes); *State v. Kirby,* 325 S.C. 390, 399, 481 S.E.2d 150, 154 (Ct.App.1996).

---

**8.** Reid also alleges because an attempt crime requires the State to prove an overt act in furtherance of the principal crime, the additional element of the lesser offense, in this instance communicating with the victim, was an element of attempted CSC with a minor second degree. This argument has no merit. One may attempt to commit CSC with a minor without any communication at all. *See Fristoe,* 658 P.2d at 831. Regardless of whether the act of communication is an act of preparation or an act in furtherance of the crime, it is not dispositive of a lesser included offense analysis. Thus, the trial court properly charged the jury with the two separate offenses.

## CONCLUSION

Based on the foregoing the convictions are **AFFIRMED.**[9]

HUFF and GEATHERS, JJ., concur.

---

**9.** No issues were raised herein as to merger, impossibility, or entrapment and we need not address those doctrines or their applicability.