THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL G. WALTER, JR., Defendant-Appellant.

Second District    No. 2—02—1359

Opinion filed May 26, 2004.

Phyllis J. Perko, of Law Offices of Harlovic & Perko, of West Dundee, for appellant.

Gary W. Pack, State's Attorney, of Woodstock (Martin P. Moltz, Lawrence M. Bauer, and Sabrina S. Henry, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Daniel Walter, Jr., was charged with three counts of attempt (aggravated criminal sexual abuse) (720 ILCS 5/8—4(a), 12—16(d) (West 1998)). Following a bench trial, defendant was convicted of

one count of the offense and sentenced to probation. Defendant now appeals from his conviction. We reverse.

In April 1999, defendant, age 24, began exchanging e-mails with Rachel K. of Harvard, Illinois. Rachel, who was 15 years old at the time, had placed a personal ad on her e-mail account in order to meet and get to know new people. Shortly thereafter, she received a response from defendant. The two never spoke, but they began to e-mail each other at least once a day. Some of the e-mails included discussions of sex and sexual fantasies. In a June 2 communication, defendant described his fantasy of meeting his "pen-pal" in a restaurant, then having sexual relations in a movie theater and, presumably, a hotel room. In another communication, defendant mentioned to Rachel a fantasy "of you and your best friend teaming up on me." Rachel responded, "[Y]ou never told me about this fantasy. [W]hen did you plan on telling me? [A]nd no I'd never do that with my best friend that would be way too weird!!"

In May 1999, Rachel's father, Fred, discovered some of the sexually themed e-mails. He spoke to Rachel about the e-mails, but noticed that she continued to communicate with defendant at least once a day. In June, Fred printed some of the e-mails from May and June and took them to the Harvard police department. Detective Dean Burton reviewed the e-mails, including a June 2 message wherein defendant and Rachel discussed meeting in person. Burton met with Rachel on June 15, and he reviewed all subsequent e-mails between Rachel and defendant. He also told Rachel that, if the subject of meeting were to come up, she should suggest that defendant meet her in some public place, such as a McDonald's restaurant.

On June 16, Rachel asked defendant if he had thought anymore about meeting in person. Defendant told her that maybe they could meet for lunch on a weekday. Defendant also said:

"As before, whatever makes you comfy is fine by me, if that means brings [sic] your best friend or whatever. I'm nervous/weary [sic] about meeting parents, but [if] it makes you feel better I will. Like I said, I don't know how they'd take to a 24 year old talking to their 16 year old daughter."

Defendant said that he thought about Rachel and "those fantasies." The next day, Rachel responded that she would feel more comfortable with her best friend present. She still thought about the fantasies and thought that "once we meet we could talk about those fantasies and see how we both feel about them." Several days later, defendant e-mailed back that the earliest he could meet Rachel was July 7 and that "I'm willing to if you are." Rachel responded that they should meet at the McDonald's in Harvard on July 7.

On July 2, defendant informed Rachel that he planned to arrive at noon. He said he could stay:

"For a couple of hours. We'll see, maybe you can convince me to stay more ...? Not too much though, because I still have to work that day."

On July 6, Rachel sent an e-mail describing what she and her friend would be wearing the next day. At Burton's behest, she also mentioned that there was a hotel near the McDonald's. Defendant responded, "That sounds interesting. That may be a possibility : )."

Detective Burton went to the McDonald's at about 11:15 a.m. on July 7. Rachel was not present. Burton, who had seen a picture of defendant, saw him enter the McDonald's, buy a meal, and sit in a booth. Defendant sat in the booth, eating and reading a newspaper, for about one hour. As defendant left, Burton followed him out to the parking lot and introduced himself, but told defendant, "you might better know me as Rachel." Although Burton told defendant that he was not under arrest, an unmarked squad car pulled behind defendant's car so that he could not exit the parking lot in his car. Defendant agreed to accompany Burton to the police station to discuss the situation regarding Rachel. When asked if he knew that he had been exchanging e-mails with a 16-year-old girl, defendant stated that he did, and that he knew that Rachel was only 15 when they began e-mailing each other. He was also aware that, if he had committed the sexual acts that he had discussed with Rachel, he would have committed a crime.

Defendant consented to a search of his car. Officers found a bag containing a candy bar and a box of condoms. The receipt in the bag showed that the items had been purchased that morning. According to Burton, defendant stated that he bought the condoms "just in case he did have sex with Rachel that day" and that if he did not have sex with Rachel, he would use them with his girlfriend. The officers also found two atlases in the car. Defendant told the officers that he used an atlas and the Internet to determine how to get to Harvard.

Defendant also gave Burton a written statement, which included, in relevant part:

"So I figured we could meet for lunch, to put a name to the face. She sent a final couple of emails, one of which referred to possibly acting out the fantasy. I said, it was a possibility. I then began to wonder if she were serious—because I was going to be in serious trouble if I did follow through! Just in case, I bought a box of condoms (3) and was convinced that I would only go through with it if she understood that I (and she) could get in serious trouble. *** I decided against action, unless Rachel was provocative.

* * *

I had no intention of sleeping with a 16-year-old unless the situation felt right (which would have been Rachel acting far more adult than her age). I had no malicious or violent intent whatsoever. I acknowledge that I engaged in fairly risky, serious behavior and that I acted against my better judgment in wanting to meet her. However, that was all I was looking for—a lunch with an email/internet friend and her best friend."

Burton reviewed the evidence with the State's Attorney's office, then placed defendant under arrest. He obtained search warrants for defendant's home and office. Officers seized defendant's computers from both locations and several computer disks from his home. In addition, Burton found a piece of paper near defendant's home computer that contained the telephone numbers of a hotel and a motel in Harvard and a dollar amount near the hotel telephone number. Burton also seized from defendant's bedroom an open box containing three sealed condoms.

The trial court found defendant guilty of attempt (aggravated criminal sexual abuse) in that defendant:

"[K]nowingly traveled to the McDonald's Restaurant located at 353 South Division Street, Harvard, Illinois in order to meet a minor, R.K., for the purpose of engaging in sexual conduct with R.K. ***."

Defendant now contends that he was not proven guilty of that charge beyond a reasonable doubt. We agree.

In assessing an argument that the evidence was insufficient to sustain a conviction, it is not this court's function to reweigh the evidence; rather, the issue is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Scott*, 318 Ill. App. 3d 46, 53 (2000). It is the role of the trier of fact to resolve contradictory evidence and factual disputes and to weigh the credibility of witnesses. *Scott*, 318 Ill. App. 3d at 53.

■ To prove a defendant guilty of attempt, the State must establish beyond a reasonable doubt that the defendant intended to commit the offense and that he took a substantial step toward the commission of the offense. 720 ILCS 5/8—4(a) (West 1998); *Scott*, 318 Ill. App. 3d at 52-53. For purposes of this case, a person commits aggravated criminal sexual abuse when he:

"[C]ommits an act of sexual penetration or sexual conduct with a victim who was at least 13 years of age but under 17 years of age and the accused was at least 5 years older than the victim." 720 ILCS 5/12—16 (d) (West 1998).

■ We first address whether any rational trier of fact could have

found that defendant possessed the requisite intent to commit aggravated criminal sexual abuse. Intent need not be expressed, but may be inferred from the defendant's conduct and the surrounding circumstances. *Scott*, 318 Ill. App. 3d at 53. Here, the evidence shows that defendant and Rachel sent each other dozens of e–mails, the vast majority of which were not sexual in nature. Although defendant had brought up the possibility of meeting, he dropped the issue, and it was not brought up again until Rachel raised it at Detective Burton's instigation. Even at that point, Rachel insisted that her best friend be present; defendant agreed and said in his written statement that he looked forward to "a lunch with an email/internet friend and her best friend." Rachel even described the clothing that she and her friend would be wearing. Rachel's remark, also instigated by Burton, that there was a hotel near the McDonald's, drew the noncommittal response, "That sounds interesting. That may be a possibility : )." There was no other discussion of a sexual nature. Defendant found the telephone numbers of a hotel and a motel in Harvard, and evidently called one of the establishments for price information. However, there was no evidence that he knew the address of either establishment or made a reservation, and he did not bring the information with him to Harvard.

Defendant's written statement to the police was vague. While defendant acknowledged his thoughts about having sex with Rachel, and also acknowledged the trouble he would be in if he did so, he filled the statement with phrases such as, "Just in case," "*if* I did follow through," "I would only go through with it *if*," "I decided against action, *unless*," and "I had no intention of sleeping with a 16 year old *unless*" (all emphases added). This does not clearly indicate intent; it is at most conditional.

*Scott*, while very similar, is distinguishable. In *Scott*, a detective went into an on-line chat room, pretending to be a 12-year-old boy named "Ricky." The defendant and Ricky chatted, including references to sexual matters, and agreed to meet later that day. The defendant did not appear at the meeting, but he e-mailed Ricky the next day. They engaged in a sexually suggestive dialogue for about one hour. The defendant mentioned the possibility that he could get into trouble if he had sex with Ricky; nevertheless, he wanted to meet and become acquainted with him. Ricky then requested that the defendant send him pictures of men engaged in sexual conduct. The defendant complied, sending two computer images of nude young males, including one image of sexual penetration. *Scott*, 318 Ill. App. 3d at 53. The two then agreed to meet the following day. The defendant was arrested when he appeared at the agreed-upon location. The defendant

stated that he knew that "Ricky" was 12 years old and further stated that he would have had sex with him if Ricky had wanted to do so. *Scott*, 318 Ill. App. 3d at 49.

This court found an unambiguous intent to engage in an act of sexual penetration. See *Scott*, 318 Ill. App. 3d at 53. However, while the facts in the case before us appear similar, one fact from this case stands out and casts ambiguity upon defendant's intent: Rachel's best friend was to be present at the planned meeting. This fact places all of defendant's conduct in a different context. In light of the planned presence of Rachel's friend, defendant's research of Harvard hotels (already of questionable import because the information was not taken to Harvard and there was no evidence that any reservation was made) and his purchase of condoms appear to suggest wishful thinking and fantasy, as opposed to actual planning and intent. Hope and fantasy do not equal intent, even if they lead to actions that could make the fantasy come true. Every man going on a blind date with a condom in his wallet might hope to have sex, but that does not mean he intends to have sex; this is especially so where the circumstances of the date are not conducive to privacy. The impossibility of completing the offense attempted is not a defense (*People v. Patterson*, 314 Ill. App. 3d 962, 969 (2000)); similarly, the mere *possibility* of completing an offense is not proof of intent to commit the offense.

None of this is to make light of the situation or to dismiss defendant's actions as some adolescent fantasy. Defendant seems to have appreciated the inappropriateness of his sexual conversations with Rachel and the potential legal implications of any sexual activity with her. Yet, he continued his contact with her. It is true that the sexual aspects of their conversations ceased after mid-June until Rachel, at Burton's behest, brought up the existence of a nearby hotel. Defendant's response was noncommittal, but it should have been adamant that there would be no sex. Defendant should have acted like a responsible adult; instead, he acted like an irresponsible teenager and led both Rachel and himself on. But while defendant's conduct was pathetic, inappropriate, and ill–advised, we conclude that it falls short of demonstrating an actual intent to have sex.

Even if we were to conclude that the trial court's finding of intent was supported by the evidence, we would still conclude that defendant did not take a "substantial step" toward the commission of the offense of aggravated criminal sexual abuse. While it is not necessary for a defendant to complete the last proximate act in order to be convicted of attempt, mere preparation is insufficient to be considered a substantial step. *Patterson*, 314 Ill. App. 3d at 971. Determining what conduct will be held to be a substantial step must be determined by

the facts and circumstances of each case. *Patterson*, 314 Ill. App. 3d at 971.

Like *Scott*, *Patterson* involved a police detective (the same detective as *Scott*) representing himself as an underage boy on the Internet and agreeing to meet the defendant for a sexual encounter. In *Patterson*, this court found that the defendant's conduct constituted a substantial step toward the commission of the offense of aggravated criminal sexual abuse because he "completed every step and action that he possibly could have." *Patterson*, 314 Ill. App. 3d at 971. This conduct included arranging to meet the boy (called "Yacoo") at a specific time and place, describing his car and the clothing he would be wearing, sending Yacoo a picture of himself to aid in identification, traveling to the agreed-upon location at the appointed time, admitting to police that he was waiting for a 15-year-old boy, and "agree[ing] [on the Internet] to perform oral sex on Yacoo that day." *Patterson*, 314 Ill. App. 3d at 971. In *Scott*, we concluded that, while Internet communication alone was insufficient to constitute a substantial step, a rational trier of fact could find such a step by coupling the communication with the act of driving to an agreed-upon location. See *Scott*, 318 Ill. App. 3d at 55.

Here, we cannot set the bar as low as we did in *Scott*, and we distinguish *Scott* insofar as it ruled on the issue of substantial step. In *Patterson*, *Scott*, and the case before us, the defendant was to meet the potential victim in a restaurant. No sexual act would occur in the public portion of the restaurant. Any sexual act would have required the defendant and the victim to go to another location, such as a bathroom at the restaurant, the defendant's car, or a hotel. Here, where the arranged meeting, already planned to occur in a public place, was to include Rachel's best friend, and where the communications leading up to the meeting were not explicitly about sexual matters, merely showing up at the restaurant does not lead to the inevitable conclusion that a sexual act would occur. Had the meeting been arranged to take place in a hotel, a private residence, a highway rest stop bathroom, or merely in defendant's car in a parking lot, a substantial step toward the commission of the offense could reasonably be found. However, under these facts, merely driving to a meeting in a very public place falls short of such a substantial step. Defendant's actions, though ill-advised, did not constitute a substantial step toward the commission of the offense of aggravated criminal sexual abuse.

Because of our disposition of this issue, we need not address defendant's contention that the trial court admitted evidence in error.

For these reasons, the judgment of the circuit court of McHenry County is reversed.

Reversed.

HUTCHINSON, J., concurs.

JUSTICE GILLERAN JOHNSON, dissenting:

I respectfully dissent. The evidence in this case was more than sufficient to prove that the defendant committed an act of attempted aggravated criminal sexual abuse. The State proved, beyond a reasonable doubt, that the defendant intended to commit an act of aggravated criminal sexual abuse and that he took a substantial step toward the commission of that offense.

In reviewing the sufficiency of the evidence, we should not retry the defendant. *People v. Jamesson*, 329 Ill. App. 3d 446, 458 (2002). Rather, we should consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Patterson*, 314 Ill. App. 3d 962, 968-69 (2000). Indeed, the trial court's judgment shall not be set aside unless the proof is so unsatisfactory, improbable, or implausible as to justify a reasonable doubt as to the defendant's guilt. *People v. Campbell*, 146 Ill. 2d 363, 374-75 (1992); *People v. Slim*, 127 Ill. 2d 302, 307 (1989). Great deference must be given to trial judges when they hear the evidence and observe the witnesses. *People v. Austin*, 328 Ill. App. 3d 798, 804 (2002). The majority gives brief lip service to this standard and then surreptitiously overlooks it when reaching its erroneous conclusion that the defendant lacked intent.

In this case, a rational trier of fact could have found that the defendant intended to commit aggravated criminal sexual abuse. Intent, in attempt cases, is a mental state seldom susceptible of direct proof, but which often must be inferred from circumstantial evidence. *People v. Williams*, 295 Ill. App. 3d 663, 665 (1998). Such evidence existed in this case. The defendant here, a 24-year-old man, corresponded via e-mail with a 16-year-old girl. Many of the e-mails were sexually explicit. In one such e-mail, the defendant fantasized about meeting an Internet "pen-pal" in a restaurant and then having sex with her in a movie theater and again later in a hotel room. In another e-mail, the defendant described a sexual encounter that he would like to have with the victim, involving condoms, oral sex, and showering together. In yet another e-mail, the defendant talked about being the victim's first sexual partner and having sex with both the victim and her friend at the same time.

After inappropriately corresponding with the victim for a month, the defendant arranged to meet the victim and her friend at a Mc-Donald's restaurant. In preparation for the meeting, the defendant obtained the names and telephone numbers of a hotel and a motel near the restaurant. He called the hotel for price information. In one of his e-mails, the defendant suggested to the victim that he would be willing to spend more than a couple of hours with her. On the scheduled date and time, the defendant arrived at the restaurant with condoms that he had purchased that morning. The defendant admitted to the police that he had bought the condoms "just in case" he had sex with the victim that day. Given these facts, the trial court found that the defendant intended to have sex with the victim. The trial court's finding was not improbable or implausible.

Furthermore, a rational trier of fact certainly could have found that the defendant took a substantial step toward committing aggravated criminal sexual abuse. The defendant asked the victim to meet him, he arrived at the agreed-upon meeting place at the arranged time, and he came prepared to have sex with the victim.

In summary, the evidence was more than sufficient to prove that the defendant committed an act of attempted aggravated criminal sexual abuse. The record reveals that the defendant both intended to commit the offense and took a substantial step in its commission. The trial court's finding of guilt should not be disturbed.