# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Lipscomb-Bey*, 2012 IL App (2d) 110187

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN K. LIPSCOMB-BEY, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-0187 |
| Filed | December 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Although the evidence showed defendant did show up at a designated location to negotiate the sale of a firearm, there was insufficient evidence to establish beyond a reasonable doubt that defendant took a substantial step toward committing the offense of being an armed habitual criminal, especially when defendant did not have a firearm, and therefore his conviction for that offense was reversed. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 10-CF-896; the Hon. John J. Kinsella, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |

Counsel on Appeal     Thomas A. Lilien and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, and Lawrence M. Bauer and Joan M. Kripke, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel     PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion.

Justices Jorgensen and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1     Following a jury trial, defendant, John K. Lipscomb-Bey, was convicted of two counts of being an attempted armed habitual criminal (720 ILCS 5/8-4(a), 24-1.7(a) (West 2010)) and one count of possession of a controlled substance (720 ILCS 570/402(c) (West 2010)). He was sentenced to concurrent terms of 20 years' imprisonment for the attempt convictions, to be served consecutively with a 6-year term for the drug conviction. On appeal, defendant argues that: (1) the evidence was insufficient to show a substantial step for the attempt crimes; (2) the speedy-trial term had run on the attempt charges, because they were subject to compulsory joinder; and (3) one of the attempt convictions must be vacated under the one-act, one-crime doctrine. We agree with defendant's first argument and therefore reverse his convictions of being an attempted armed habitual criminal.

¶ 2                          I. BACKGROUND

¶ 3     On April 29, 2010, defendant was charged by superseding indictment with three counts stemming from an incident on April 15, 2010. Count I alleged unlawful possession of ammunition by a felon (720 ILCS 5/24-1.1(a) (West 2010)), in that defendant, a felon, knowingly possessed a .32-caliber bullet. Count II charged defendant with unlawful possession of less than 15 grams of a substance containing cocaine. Count III alleged unlawful possession of ammunition by a forcible felon (720 ILCS 5/24-1.1(a) (West 2010)), in that defendant had previously been convicted of the forcible felony of attempted murder and knowingly possessed a .32-caliber bullet.

¶ 4     A few months later, on August 17, 2010, defendant was charged with two counts of being an attempted armed habitual criminal. Count IV alleged that defendant, with the intent to commit the offense of being an armed habitual criminal, performed a substantial step toward

the commission of that offense, in that he agreed to sell a firearm and drove to a predetermined location with the intent to sell a firearm, after having previously been convicted of the forcible felony of armed robbery and having been convicted of the Class 1 felony of manufacture or delivery of a controlled substance. Count V was identical except that it alleged two prior convictions of the forcible felony of attempted murder.

¶ 5 Defendant's trial began on November 9, 2010. Agent Daniel Alaimo of the Du Page Metropolitan Enforcement Group (DuMEG) provided the following testimony. In April 2010, DuMEG learned from Internet postings about prostitution occurring at the Extended Stay Hotel in Downers Grove. Posing as a customer, a DuMEG agent contacted a woman from a posting, who called herself "Avery," and arranged a meeting with her at the hotel on April 14, 2010. When DuMEG agents arrived at the hotel room, they placed the woman, Alyshia Dorton, under arrest for prostitution. Dorton agreed to cooperate and provide information in exchange for not being charged with prostitution. Dorton told Alaimo that she could arrange to have someone sell her a handgun.

¶ 6 The following day, at about 1 p.m., Alaimo met with Dorton in his car in the hotel's parking lot. Dorton said that she had contacted an associate who gave her the phone number of a man named "John" who could supply her with a handgun. Alaimo consulted with other DuMEG agents and then met with Dorton again at about 3 p.m. He asked Dorton to call "John" through speakerphone, and Alaimo listened in. Dorton called and asked if the person who answered was "John," and the man answered in the affirmative. The man did not mention his last name. Dorton said that she needed a handgun to protect her from some individuals. The man said that he would provide her with a gun but that he would not be available until after 6 p.m. Dorton asked how much it would cost, and "John" said that he did not want to talk about it on the phone but would discuss the price when he arrived. "John" did not describe the gun. Dorton told him that she was at the Extended Stay Hotel.

¶ 7 Around 8 p.m., Alaimo met with Dorton again in the hotel's parking lot, this time in a minivan. Six armed agents were in another van at the hotel's back door. Agents were also in a truck at the hotel's entrance for surveillance. At Alaimo's request, Dorton called "John" through speakerphone and asked where he was. The man said that he had just left Chicago's west side and was on his way. He asked Dorton for directions to the hotel, which she provided. Dorton asked if he had a handgun for her, and he said that he did. She asked about the price, but "John" still did not want to discuss it over the phone. He advised Dorton that he would be driving a white Cadillac and would be there in about one hour. Dorton told him to come to the back of the hotel and she would let him in the back door. For safety reasons, DuMEG agents did not plan to have Dorton actually meet with "John" or have him enter the hotel.

¶ 8 At about 9 p.m., a white Cadillac parked by the hotel's back door. Dorton received a call from "John," who said that he had arrived. Dorton said that she would be down to let him in. Alaimo and other agents approached the Cadillac, from which defendant had just exited. Alaimo asked defendant what he was doing there, and defendant said that he was going to meet a friend named Avery. Alaimo recognized defendant's voice as that of "John" from the phone calls. Alaimo asked how defendant knew Avery, and he said that it was through a mutual friend. When asked why he was visiting Avery, defendant said that she was having

problems with some people and that he was there to provide her with "some sort of protection." Alaimo asked what defendant meant by "protection," but he would not elaborate.

¶ 9    Meanwhile, other agents were using flashlights to look into defendant's car windows, and an agent alerted Alaimo that they found something. Alaimo looked in the car and saw on the front passenger's seat a black digital scale with white powder residue. Based on his training and experience, Alaimo believed that it was used for weighing drugs. Defendant volunteered that he was not a drug dealer and that the scale was for his personal use. An agent alerted Alaimo to something else, and he saw a small bullet on the backseat floorboard. Alaimo asked defendant if he had a firearm owner's identification (FOID) card, and defendant said that he did not, because he had a felony conviction. At that point, Alaimo placed defendant under arrest.

¶ 10    Alaimo read defendant his *Miranda* rights, and defendant agreed to speak to him. Alaimo asked defendant if he had a gun, and defendant replied in the negative. When asked about the bullet, defendant said that he had been arrested years ago for having a .32-caliber handgun and that it was probably left over from that. Defendant said that the car was his but was registered in his mother's name and that he was the only driver.

¶ 11    Agents meticulously searched the car but did not find a handgun. They also did not find a gun while searching the parking lot area. They took the scale and the bullet into evidence, and it was later determined that the bullet was .32-caliber. They further found in the car's center console a piece of paper with the name "Avery" and directions from Chicago to the hotel.

¶ 12    The State's Attorney's office contacted Alaimo about bringing Dorton in to testify. He spoke to her on the phone, and she said that she was in California and did not want to travel to Illinois because she could be extradited to Minnesota on an outstanding warrant. Alaimo was not able to confirm Dorton's exact whereabouts.

¶ 13    A forensic chemist testified that she tested the surface of the scale and found the presence of cocaine.

¶ 14    The parties stipulated that defendant had been convicted of felonies, including two forcible felonies and a violation of the Illinois Controlled Substances Act (720 ILCS 570/100 *et seq.* (West 2010)).

¶ 15    Laura Carter, defendant's mother, testified that she loaned her Cadillac to defendant on the day of his arrest. She often loaned her car to her live-in friend Donald Rogers, and he drove it frequently in the month before defendant's arrest. Carter had never seen any scales or bullets in her car.

¶ 16    Rogers testified that he drove Carter's Cadillac almost every day to commute to work. A couple of years before, Rogers was doing demolition work at a jobsite, ripping out a wall, and found a pillowcase with a scale and two boxes of bullets. He put the pillowcase in the trunk and sorted the contents when he got home. He then threw the bullets in the garbage and put the scale back in the trunk. Rogers admitted that in 2002 he was convicted of the felony of delivery of a controlled substance and that his driver's license had been revoked since 1979.

¶ 17    The jury found defendant not guilty of unlawful possession of ammunition by a forcible

felon and unlawful possession of ammunition by a felon. It found defendant guilty of unlawful possession of a controlled substance and the two counts of being an attempted armed habitual criminal.

¶ 18 Defendant filed a motion for a new trial on November 30, 2010, which the trial court denied on January 11, 2011. Following sentencing and the denial of defendant's motion to reconsider his sentence, defendant timely appealed.

¶ 19                                II. ANALYSIS

¶ 20                        A. Sufficiency of the Evidence

¶ 21 On appeal, defendant first argues that he was not proven guilty beyond a reasonable doubt of being an attempted armed habitual criminal, because there was insufficient evidence to show a substantial step for committing an attempt. We first set forth the applicable standard of review. When faced with a challenge to the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The trier of fact has the responsibility to assess witnesses' credibility, weigh their testimony, resolve inconsistencies and conflicts in the evidence, and draw reasonable inferences from the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). We will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 225 (2009).

¶ 22 Although defendant lists this issue as being "[w]hether the evidence was insufficient to show a substantial step to commit an attempt" and sets forth the aforementioned standard, he also states that where the facts are uncontested, the question of whether conduct amounts to a "substantial step" is one of law. The case law on this subject is not uniform. Compare *People v. Hawkins*, 311 Ill. App. 3d 418, 423 (2000) (whether uncontested facts constituted a "substantial step" toward commission of sexual assault was reviewed *de novo*), with *People v. Norris*, 399 Ill. App. 3d 525, 530 (2010) (whether a defendant's conduct constitutes a substantial step toward commission of a crime is an issue as to the sufficiency of the evidence, not a question of law, and the *Collins* standard applies). We believe that *Collins* is the appropriate standard but note that under either standard our result would be the same.

¶ 23 For an attempt crime, the elements are the intent to commit a specific offense (in this case, being an armed habitual criminal) and "any act that constitutes a substantial step toward the commission of the offense." 720 ILCS 5/8-4(a) (West 2010). A person commits the offense of being an armed habitual criminal if he receives, sells, possesses, or transfers any firearm after having been convicted two or more times of any combination of the following: (1) a forcible felony; (2) various felonies; or (3) a Class 3 or higher drug offense. 720 ILCS 5/24-1.7(a) (West 2010). Defendant does not dispute the elements relating to the prior convictions or his intent, but rather he argues that the State did not prove that he took a "substantial step" toward selling a gun.

¶ 24 What constitutes a substantial step is determined by each case's unique facts and

circumstances. *People v. Perkins*, 408 Ill. App. 3d 752, 758 (2011). Mere preparation is not enough (*id.*), and the act must not be too far removed in time and space from the conduct that constitutes the principal offense (*People v. Kirchner*, 2012 IL App (2d) 110255, ¶ 18). Still, the defendant does not have to complete the last proximate act to actual commission of the crime. *Perkins*, 408 Ill. App. 3d at 758. Rather, the facts are to be placed on a "continuum between preparation and perpetration." *People v. Terrell*, 99 Ill. 2d 427, 434 (1984). A substantial step occurs when the act puts the defendant in a dangerous proximity to success. *Id.*

¶ 25    Illinois courts have looked to the Model Penal Code for guidance in determining whether a defendant took a substantial step toward the commission of a crime. See *People v. Smith*, 148 Ill. 2d 454, 461 (1992). The Model Penal Code lists conduct that is to be considered sufficient as a matter of law to support an attempt conviction, as long as the conduct is strongly corroborative of the actor's criminal purpose:

"(a) lying in wait, searching for or following the contemplated victim of the crime;

(b) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission;

(c) reconnoitering the place contemplated for the commission of the crime;

(d) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed;

(e) possession of materials to be employed in the commission of the crime, that are specially designed for such unlawful use or that can serve no lawful purpose of the actor under the circumstances;

(f) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, if such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances;

(g) soliciting an innocent agent to engage in conduct constituting an element of the crime." Model Penal Code § 5.01(2) (1985).

¶ 26    Defendant argues that, viewed in the light most favorable to the State, the evidence shows that two people discussed and planned to meet regarding the purchase of a firearm. Defendant argues, however, that there was no actual meeting, no price was even discussed, much less agreed upon, and there was no evidence that the firearm ever existed. Defendant argues that, under the circumstances, the prosecution did not show that he took a substantial step toward selling a firearm and thus committing the offense of being an armed habitual criminal.

¶ 27    In support of his argument, defendant cites a series of cases, beginning with *Smith*, 148 Ill. 2d 454. There, the defendant took a train from Chicago to Highland Park and then took a cab to Waukegan. The defendant told the driver that he was looking for a jewelry store on Genesee Street. *Id.* at 456. The driver pointed out one store to the defendant, but the defendant replied that it was a " 'Mexican' " store and not the one he was looking for. The defendant then instructed the driver to take him to the Waukegan train station, whereupon

he robbed the driver and drove off in the cab. *Id.* at 457. The defendant was caught a short time later, in possession of a gun and a pillowcase. He admitted to the police that he intended to rob an unidentified jewelry store on Genesee Street and to use the stolen cab as a getaway car. The defendant did not know the name of the jewelry store but knew what the building looked like. *Id.*

¶ 28    The appellate court reversed the defendant's conviction of attempted armed robbery of a jewelry store, and the supreme court affirmed. The supreme court stated that the defendant's acts of carrying a gun, traveling to Waukegan, searching for the jewelry store, and driving the stolen cab that he intended to use as a getaway vehicle did not constitute the statutorily required substantial step necessary for an attempt crime. *Id.* at 462. The supreme court looked to the Model Penal Code factors in stating that: (1) the contemplated victim, the jewelry store, was never identified; (2) it could not be said that the defendant was reconnoitering the jewelry store, because the store was never identified by name, location, or physical description; and (3) the gun and pillowcase found on the defendant were not materials specifically designed for robbing a jewelry store, and they were not possessed near the place contemplated for the commission of the crime. *Id.* at 462-64.

¶ 29    In reference to *Smith*, defendant argues as follows. Here, there was no evidence of a firearm, the material to be employed in the commission of the crime. Absent the firearm, the sale could not have taken place, even if the police had not intervened when they did. Defendant never met Dorton and would have had to arrange to meet her another time to sell her the firearm, and thus the mere act of driving to the hotel was too far removed in time from the alleged attempted offense.

¶ 30    Defendant further cites *People v. Walter*, 349 Ill. App. 3d 142 (2004). There, the defendant and a 15-year-old exchanged e-mails regarding sex and sexual fantasies. The girl's father notified the police, and the police instructed the girl to suggest meeting at a public place, such as a McDonald's. The defendant agreed to meet the girl, saying that the girl could bring her best friend with her if it made her feel more comfortable. *Id.* at 143. In the girl's place, an officer met the defendant at the McDonald's. The defendant admitted that he knew the girl's age and that, if he had committed the sexual acts he had discussed with her, it would have been a crime. The defendant had a box of condoms in his car, which he said he had bought " 'just in case he did have sex with [the girl] that day.' " *Id.* at 144. The defendant was convicted of attempted aggravated criminal sexual abuse, but this court reversed on appeal. We concluded that there was insufficient evidence of the defendant's actual intent to have sex. We stated that, even otherwise, the defendant did not take a substantial step toward the commission of aggravated criminal sexual abuse, because merely driving to a meeting in a very public place fell short of a substantial step where the girl's best friend was also invited and the conversations leading up to the meeting were not explicitly sexual. *Id.* at 147-48.

¶ 31    Defendant argues that, in this case, he went to the hotel in connection with a sales transaction, but, as in *Walter*, the police intervened before the meeting took place. Defendant argues that the communications with Dorton were very vague about the transaction's terms, as there was not a set price for the gun or even a discussion about the type of gun. Defendant maintains that the parties were far from a meeting of the minds, much less an actual physical

exchange of a gun for cash.

¶ 32     Defendant also relies on *United States v. Cea*, 914 F.2d 881 (7th Cir. 1990). In *Cea*, the defendant was arrested after he left his home following a conversation with an undercover officer about purchasing drugs. The defendant had agreed to meet the officer at the phone booth from which the officer was calling. *Id.* at 884. The Seventh Circuit held that there was insufficient evidence of a substantial step, because there was no evidence that the officer told the defendant the actual location of the phone booth. Thus, it was unknown whether the defendant was heading in the direction of the phone booth, or even where he was arrested in relation to his home. Further, there was no evidence that the defendant had the money to complete the transaction. The court stated that, if "the government had been more patient and deferred [the defendant's] arrest until it could be said with assurance that [he] was approaching [the undercover officer] at the pay phone, there would not be this substantial step problem." *Id.* at 888. Defendant argues that, similar to *Cea*, he did not know where Dorton was and did not have the firearm for the transaction.

¶ 33     Defendant distinguishes the facts here from those in *People v. White*, 84 Ill. App. 3d 1044 (1980). There, the defendant went into a food store and asked the owner if he wanted to buy food stamps. The defendant persisted even after the owner declined, saying that he needed the money and wanted to sell the stamps. The owner called the police, and a search of the defendant revealed that he had food stamps and documents indicating that he was authorized to receive the stamps. *Id.* at 1046. The appellate court rejected the defendant's argument that there was insufficient evidence that he took a substantial step toward attempting to sell food stamps, stating that the defendant's asking the store owner if he wanted to buy food stamps was a substantial step. *Id.* at 1047.

¶ 34     Defendant argues that *White* is distinguishable in one important respect because the defendant there had the object of the transaction in his possession and spoke personally to the would-be buyer, thereby showing that he had the present ability to consummate the sale. Defendant argues that all that was left in *White*, therefore, was for the store owner to agree to some terms, whereas here he did not have a gun in his possession or meet with Dorton.

¶ 35     Defendant further argues that, while narcotics are inherently illegal to possess, guns are not contraband *per se* and not all private firearm sales are illegal in Illinois. Defendant argues that at the time the police approached him, he could have been a lawful possessor of a firearm. He argues that there was no evidence that he knew that Dorton was a prostitute, and, even if he did, she could have still had a valid FOID card. Thus, he argues, the transaction was not inherently illegal when the police approached him. Defendant argues that at most the evidence shows that he drove to meet someone in connection with the sale of an unspecified, nonexistent gun for an unspecified price and then appeared but did not in fact meet the would-be buyer. Defendant argues that these facts do not prove that he took a substantial step toward the commission of an illegal sale of a gun.

¶ 36     The State cites *People v. Patterson*, 314 Ill. App. 3d 962 (2000), and *People v. Scott*, 318 Ill. App. 3d 46 (2000). In *Patterson*, the defendant communicated over the Internet with an undercover officer posing as a 15-year-old boy. The defendant offered to perform oral sex on the boy, and he set up a meeting and described what he would be wearing. The defendant

thereafter proceeded to the meeting location, where he was arrested. *Patterson*, 314 Ill. App. 3d at 965-66. The appellate court rejected the defendant's argument that he had not taken a substantial step toward aggravated criminal sexual abuse, reasoning that, since the victim did not actually exist, the defendant had taken every possible step he could have toward the offense. *Id.* at 971.

¶ 37    In *Scott*, the defendant also had sexually explicit communication on the Internet with an officer posing as a boy. They agreed to meet at a Denny's restaurant, and when the defendant arrived there he was arrested and admitted that he would have had sex with the boy if the boy had wanted to. *Scott*, 318 Ill. App. 3d at 49. The appellate court held that the defendant had completed a substantial step toward the commission of predatory criminal sexual assault. It stated that while the Internet communication alone would not have been enough, the defendant had both engaged in Internet conversations in which he enticed the boy to meet with him and then drove to the agreed-upon location for the meeting. *Id.* at 55.

¶ 38    The State argues that, under *Scott* and *Patterson*, it was not necessary for Dorton to have been present or for a gun to have been found for defendant to have taken a substantial step toward committing the offense of being an attempted armed habitual criminal. The State argues that defendant agreed to sell a gun to Dorton in two different telephone conversations, agreed to meet her at the hotel for the transaction, asked for directions to the hotel while en route, and drove to the hotel and parked his car there. The State argues that this case is distinguishable from *Walter* because defendant agreed to sell a gun to Dorton and the exchange of a gun was possible, even in a public area.[1]

¶ 39    The State argues that this case is distinguishable from *Smith* and *Cea* because here the location of the proposed sale was known to both parties, and defendant arrived at the designated location before he was arrested. The State further argues that, although the defendant in *White* possessed the food stamps he was trying to sell illegally, it was not a determining factor for the court, which instead relied on the fact that the defendant approached the store owner and repeatedly asked him to purchase the stamps. Therefore, argues the State, that defendant did not have a gun in his possession when the police stopped him is irrelevant in determining whether he had taken a substantial step toward committing the offense of being an armed habitual criminal.

¶ 40    We conclude that there was insufficient evidence to prove beyond a reasonable doubt that defendant took a substantial step toward committing the offense of being an armed habitual criminal. To convict defendant of being an attempted armed habitual criminal as charged, the State had to show that defendant took a substantial step toward receiving, selling, possessing, or transferring a firearm. See 720 ILCS 5/8-4(a), 24-1.7(a) (West 2010). Even viewed in the light most favorable to the State, the evidence showed that defendant showed up only to negotiate the terms of a sale, that there was no meeting of the minds, and that a separate encounter would have been necessary to actually transfer the gun. Indeed, as in *Smith*, while

---

[1]*Walter* distinguished *Scott* and *Patterson* on the basis that in *Walter* the meeting was to include the girl's friend and the communications leading up to the meeting were not explicitly sexual. *Walter*, 349 Ill. App. 3d at 148.

the evidence demonstrated that defendant had an intent to sell a gun, at or near the place allegedly contemplated for the sale, defendant did not possess a gun.

¶ 41    That the most basic terms of the sale still had to be negotiated and that there was no evidence that defendant had a gun nearby distinguish this situation from *Patterson* and *Scott*. Each defendant there had a very sexually explicit conversation with a person he believed to be an underage boy, agreed to meet at a particular time and place, and drove to the prearranged location. Significantly, unlike in the instant case, the defendants in those cases did not need guns or other external materials to commit the underlying sex crimes. As *Patterson* stated, given that the victim did not actually exist, the defendant had taken every possible step short of the offense. *Patterson*, 314 Ill. App. 3d at 971. That is clearly not the situation here.

¶ 42    The missing materials for the crime also distinguish this case from *White*, as that defendant had on his person the food stamps he sought to sell. The State emphasizes the appellate court's statement in *White* that the "defendant's asking [the store owner] if he wanted to buy food stamps constituted a substantial step toward the commission of the crime of selling food stamps." *White*, 84 Ill. App. 3d at 1047. However, that statement must be viewed in the context of the case, in which the defendant was in current possession of the goods to be illegally sold and could have immediately completed the sale.

¶ 43    The State legitimately emphasizes the actions defendant did take toward selling a gun, such as his repeatedly talking with Dorton and driving a significant distance to meet her. However, on a "continuum between preparation and perpetration," a substantial step is an act that puts the defendant in "dangerous proximity to success." (Internal quotation marks omitted.) *Terrell*, 99 Ill. 2d at 434. Defendant was not so close to success here, given that many essential steps remained, *i.e.*, an agreement on the price and type of gun as well as a transfer of the gun. *Cf. United States v. Delvecchio*, 816 F.2d 859, 862 (2d Cir. 1987) (where the defendants' plan to possess heroin had advanced only to the stage of meeting with suppliers to work out the deal's terms, evidence of a verbal agreement alone was not sufficient to support an attempt conviction). Had the officers been more patient and waited until it was clear that defendant was in possession of a gun or otherwise ready, willing, and able to complete the transaction, there would not be this "substantial step" problem. See *Cea*, 914 F.2d at 888. Accordingly, when defendant arrived at the scene, there was insufficient evidence that defendant had taken a substantial step toward the commission of the offense of being an armed habitual criminal, meaning that his attempt convictions must be reversed.

¶ 44    As defendant does not contest on appeal his conviction of and sentence for possession of a controlled substance, that conviction and sentence are affirmed.

¶ 45                                III. CONCLUSION

¶ 46    For the foregoing reasons, we reverse defendant's convictions of the offense of being an attempted armed habitual criminal and affirm defendant's conviction of possession of a controlled substance.

¶ 47    Affirmed in part and reversed in part.