# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Airman First Class JAMES K. COSTIANES
### United States Air Force

## ACM 38868

## 30 June 2016

Sentence adjudged 27 May 2015 by GCM convened at Shaw Air Force Base, South Carolina. Military Judge: Tiffany M. Wagner (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 2 years and 6 months, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for Appellant: Lieutenant Colonel Joy L. Primoli.

Appellate Counsel for the United States: Lieutenant Colonel Roberto Ramirez and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL, and MAYBERRY
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

MITCHELL, Senior Judge, delivered the opinion of the court, in which MAYBERRY, Judge, joined. ALLRED, Chief Judge, filed a dissenting opinion.

A general court-martial composed of a military judge convicted Appellant, in accordance with his pleas, of one specification of attempted sexual assault of a child and one specification of criminal solicitation of a minor, in violation of Articles 80 and 134, UCMJ, 10 U.S.C. §§ 880, 934. The specification of criminal solicitation of a minor alleged these actions were in violation of all three clauses of Article 134, UCMJ, to include clause 3 as a violation of the Assimilative Crimes Act, 18 U.S.C. § 13, and South Carolina Code § 16-15-342. The convening authority approved the adjudged sentence to a dishonorable

discharge, confinement for 2 years and 6 months, forfeiture of all pay and allowances, and reduction to E-1.

Appellant raises three issues for our consideration: (1) the specification of criminal solicitation of a minor as an assimilated crime under Article 134, UCMJ, was barred by the preemption doctrine; (2) the sentence was inappropriately severe; and (3) the violation of post-trial processing time standards for docketing the case with this court warrants modest relief. We agree that the Article 134, UCMJ, offense was barred by the preemption doctrine and dismiss Charge II and its specification. We affirm Charge I and its specification alleging attempted sexual assault of a child. We reassess the sentence to the sentence adjudged. We conclude no additional relief is warranted on the other two issues.

*Background*

Appellant, a 25-year-old Airman First Class, was perusing Craigslist in July 2014 when he found an advertisement stating the person posting the advertisement was "bored on [S]haw since being out of school." He responded to the advertisement and began a text conversation with "Danielle," who told him she was 14 years old. Appellant told her he was interested in "naughty fun." He sent her many other text messages with the purpose of persuading her to engage in sexual activity with him. He told her that he could teach her things sexually and he wanted to touch her vagina. After "Danielle" told him she was alone at her on-base home because her mother worked at night, Appellant drove to what he thought was an abandoned house near "Danielle's" home. He knocked on the door and discovered that "Danielle" was in fact a special agent with the Air Force Office of Special Investigations, who promptly arrested Appellant.

*I. Preemption*

Appellant argues that the Government was preempted from charging an Article 134, UCMJ, offense in this case because Congress intended to limit prosecution for such conduct in a complete way to Article 120b(c), UCMJ, 10 U.S.C. § 920b(c). This court reviews questions of statutory interpretation, including preemption, de novo. *United States v. Schloff*, 74 M.J. 312, 313 (C.A.A.F. 2015); *United States v. Benitez*, 65 M.J. 827, 828 (A.F. Ct. Crim. App. 2007).

Appellant's guilty plea neither forfeits nor waives the issue of preemption. *See United States v. Robbins*, 52 M.J. 159, 160 (C.A.A.F. 1999). The basis for the preemption doctrine is the principle that, if Congress has occupied the field for a given type of misconduct, then an allegation under Article 134, UCMJ, fails to state an offense. *See id*. A claim of preemption, therefore, presents a question of subject-matter jurisdiction of the trial court, and cannot be waived by either a plea or failure to object. *See United States v. Jones*, 66 M.J. 704, 706 (A.F. Ct. Crim. App. 2008).

We examine the challenged specification to determine if the preemption doctrine applies. We first analyze the preemption doctrine for clause 1 and 2 specifications. We then compare the elements of the enumerated offense under Article 120b, UCMJ, and the elements of the assimilated offense. Next, we examine the legislative history of Article 120b, UCMJ. We then apply the related preemption doctrine for clause 3 offenses. Last, we examine other recent preemption doctrine cases in this court and in our sister service courts. We conclude the challenged specification fails under the preemption doctrine.

## A. *Preemption Doctrine for Clause 1 and 2 Offenses*

The President placed the following limitation on Article 134, UCMJ, offenses:

> The preemption doctrine prohibits application of Article 134 to conduct covered by Articles 80 through 132. For example, larceny is covered in Article 121, and if an element of that offense is lacking—for example, intent—there can be no larceny or larceny-type offense, either under Article 121 or, because of preemption, under Article 134. Article 134 cannot be used to create a new kind of larceny offense, one without the required intent, where Congress has already set the minimum requirements for such an offense in Article 121.

*Manual for Courts-Martial, United States* (*MCM*), pt. IV, ¶ 60.c(5)(a) (2012 ed.).

Although the effect of this limitation seems clear, our superior court has long placed an additional requirement on the application of the preemption doctrine that has greatly restricted its applicability.

> [S]imply because the offense charged under Article 134, UCMJ, embraces all but one element of an offense under another article does not trigger operation of the preemption doctrine. In addition, it must be shown that Congress intended the other punitive article to cover a class of offenses in a complete way.

*United States v. Anderson*, 68 M.J. 378, 386–87 (C.A.A.F. 2010) (alteration in original) (quoting *United States v. Kick*, 7 M.J. 82, 85 (C.M.A. 1979)). Our superior court has further observed:

> Thus, we have required Congress to indicate through direct legislative language or express legislative history that particular actions or facts are limited to the express language of an enumerated article, and may not be charged under Article

134, UCMJ. *See, e.g.*, [*Kick*, 7 M.J. at 85] ("We do not agree that the legislative history of [Articles 118 and 119, UCMJ, 10 U.S.C. §§ 918, 919] indicates a clear intent to cover all homicides to the extent of eliminating negligent homicide as an offense under Article 134, UCMJ."); *United States v. Taylor*, 38 C.M.R. 393, 395 ([C.M.A.] 1968) ("There is, therefore, nothing in the legislative background of Article 115 to compel the conclusion that Congress intended to restrict criminal responsibility for self-injury to those acts delineated in the Article."); *United States v. Taylor*, 30 C.M.R. 44, 45–47 ([C.M.A.] 1960) (analyzing congressional intent regarding Articles 121 and 130, UCMJ, 10 U.S.C. §§ 921, 930, through statutory interpretation, comparison to other federal statutes, and review of legislative history).

*Id.* at 387 (second brackets in original) (parallel citations omitted).

The Government also argues that the inclusion of the terminal element means that Article 134, UCMJ, offenses contain a separate and discrete element that is not required by Article 120b, UCMJ. *See generally United States v. Fosler*, 70 M.J. 225 (C.A.A.F. 2011). We agree that our superior court has determined that Article 134, UCMJ, offenses under clause 1 or clause 2 include the terminal elements—that the conduct was service discrediting or to the prejudice of good order and discipline—not present in the enumerated offenses. Therefore, in most cases, Article 134, UCMJ, is not a lesser included offense of the enumerated offenses. *See United States v. Girouard*, 70 M.J. 5 (C.A.A.F. 2011) (stating that negligent homicide is not a lesser included offense of premeditated murder). However, our superior court has not overturned its case law on the preemption doctrine, and we are bound to follow established precedent.

We find additional support for the conclusion that the preemption doctrine is still viable by the fact that the President has not altered this limitation in the 5 years since the *Fosler* decision was issued. The preemption doctrine is expressly included in part IV of the *Manual* as a presidential limitation on Article 134, UCMJ.

[T]he President has the authority to grant greater rights under Part IV than might be provided by statute. As a result, when a Presidential rule is unambiguous in terms of granting greater rights than provided by a higher source, the rule governs, unless it clearly contradicts the express language of the UCMJ.

*United States v. Czeschin*, 56 M.J. 346, 348 (C.A.A.F. 2002). Therefore, despite the Government's argument that the terminal element requirement in Article 134, UCMJ, offenses eliminates the preemption doctrine, we conclude that the President specifically

established this limitation. This rule by the President, as expressed in the *Manual*, establishes an independent basis for the preemption doctrine. *MCM*, pt. IV, ¶ 60.c(5)(a).

## *1. Comparison of Article 120b, UCMJ, and South Carolina Law on Criminal Solicitation of a Minor*

Article 120b(c), UCMJ, provides, "Any person subject to this chapter who commits a lewd act upon a child is guilty of sexual abuse of a child and shall be punished as a court-martial may direct." The congressional definition of a "child" is a person who has not attained the age of 16 years. Article 120b(h)(4), UCMJ. An affirmative defense exists if the accused reasonably believed the child had attained the age of 16 years, provided the child was in fact at least 12 years of age. Article 120b(d)(2). The term "lewd act" is defined as:

> (A) any sexual contact with a child;
>
> (B) intentionally exposing one's genitalia, anus, buttocks, or female areola or nipple to a child by any means, including via any communication technology, with an intent to abuse, humiliate, or degrade any person, or to arouse or gratify the sexual desire of any person;
>
> (C) intentionally communicating indecent language to a child by any means, including via any communication technology, with an intent to abuse, humiliate, or degrade any person or to arouse of gratify the sexual desire of any person; or
>
> (D) any indecent conduct, intentionally done with or in the presence of a child, including via any communication technology, that amounts to a form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations.

Article 120b(h)(5), UCMJ.

Sexual contact includes "any touching, or causing another person to touch, either directly or through the clothing, any body part of any person, if done with an intent to arouse or gratify the sexual desire of any person." Article 120(g)(2)(B), UCMJ; Article 120b(h)(1), UCMJ (incorporating definitions from Article 120(g), UCMJ).

Charge II alleges a violation of South Carolina law through the Assimilative Crimes Act. The Supreme Court of South Carolina has analyzed the elements of the state law as follows:

> The criminal solicitation statute specifically identifies the following distinct elements: "(1) the defendant is eighteen years of age or older; (2) he or she knowingly contacts or communicates with, or attempts to contact or communicate with; (3) a person who is under the age of eighteen, or a person reasonably believed to be under the age of eighteen; (4) for the purpose of or with the intent of persuading, inducing, enticing, or coercing the person to engage or participate in a sexual activity as defined in Section 16-15-375(5) or a violent crime as defined in Section 16-1-60; or (5) with the intent to perform a sexual activity in the presence of the person under the age of eighteen, or person reasonably believed to be under the age of eighteen.

*State v. Green*, 724 S.E.2d 664, 669–70 (S.C. 2012) (quoting *State v. Reid*, 679 S.E.2d 194, 202 (S.C. Ct. App. 2009)), *aff'd*, 713 S.E.2d 274 (S.C. 2011).

"Section 16-15-375 defines 'sexual activity' by identifying six acts, which include 'vaginal, anal, or oral intercourse' and 'touching, in an act of apparent sexual stimulation or sexual abuse.' S.C. Code Ann. § 16-15-375(5) (2003)." *Green*, 724 S.E.2d at 668. The South Carolina law expressly excludes as a defense that the person reasonably believed to be under 18 years of age is in fact a law enforcement officer or other officer acting in an official capacity. S.C. CODE ANN. § 16-15-342(D) (2014).

When questioned by the military judge as to why his actions violated the assimilated South Carolina law, Appellant explained that his communications with "Danielle" were for the purpose of persuading her to engage in sexual activity with him. He elaborated that he intended by his communications to persuade her to allow him to touch her vagina and other parts of her body. He told "Danielle" that he wanted her to be ready with a "wet vagina" when he arrived.

The elements of the assimilated offense are no different than for a violation of Article 120b, UCMJ, for sexual abuse of a child. The allegation is covered by Article 120b, UCMJ, for lewd acts by intentionally communicating indecent language to a child or committing indecent conduct with a child or, because "Danielle" was in fact a law enforcement officer and not a child, under Article 80, UCMJ, for attempting to engage in a violation of Article 120b, UCMJ.

Given this overlap of the UCMJ and South Carolina law, the Government argues instead that the express exclusion of a defense for the actions of law enforcement agents differentiates the South Carolina statute from Article 120b, UCMJ. However, they do not attempt to explain how this is any different from an attempt under Article 80, UCMJ.

Our colleagues on the Navy-Marine Corps Court of Criminal Appeals have expressly upheld convictions for the attempted sexual assault of a child and attempted sexual abuse of a child in a case with a remarkably similar fact pattern. In their case, the appellant made a series of sexually explicit comments through electronic communication methods to 15-year-old "Amber," and arranged to meet her to engage in sexual activity. However, "[t]o his surprise, the appellant was greeted at the pre-determined location not by a 15-year-old girl, but by NCIS agents waiting to apprehend him." *United States v. Barraza*, NMCCA 201400210, unpub. op. at 3 (N.M. Ct. Crim. App. 26 February 2015). In another case, our colleagues affirmed specifications under Article 80, UCMJ, of attempted sexual assault of a child and attempted sexual abuse of a child when the appellant began communicating online with a law enforcement agent who told him that her name was "Liz" and that she was fourteen years old; the appellant made arrangements to meet with "Liz" with the intent to engage in sexual intercourse with her; and he travelled from his duty station at Camp Foster, Okinawa, to Kadena Air Base, Okinawa. *United States v. Colon*, NMCCA 201500385, unpub. op. at 2 (N.M. Ct. Crim. App. 26 April 2016). Likewise, our sister service court upheld a conviction for attempting to commit a lewd act on a child when the appellant exchanged text messages describing how he would have sex with and requesting nude or partially clothed images from a 14-year-old girl who was in fact a special agent of the Naval Criminal Investigative Services. *United States v. Lotz*, NMCCA 201400304 (N.M. Ct. Crim. App. 10 February 2015) (unpub op.).

Military case law supports the conclusion that when a servicemember communicates with a child under 16 years of age with the intent to engage in sexual acts or lewd acts, but unwittingly is conversing with an adult law enforcement agent, then the offender may be found guilty of attempted sexual assault or attempted sexual abuse of a child under Article 120b, UCMJ. We find the logic highly persuasive and it convinces us that the Government could have (and should have) charged Appellant under the UCMJ with an attempted violation of Article 120b, UCMJ.

### 2. *Legislative History of Article 120b, UCMJ*

We next examine the second prong of the preemption doctrine to determine if Congress intended the other punitive articles to cover the offense in a complete way. Based on our review of legislative history of Article 120b, UCMJ, we conclude that Congress intended it to be a comprehensive statute.

Our review of congressional intent begins with the analysis included in the *Manual*.

> As of 28 June 2012, Article 120b criminalizes sexual offenses against children under the age of 16 which were previously contained in the 2007 version of Article 120. . . . The definitions of prohibited sexual acts, sexual contact, and lewd acts have been broadened to cover all sexual offenses against children currently covered under the 2007 version of Article 120(g), Article 120(i), and Article 120(j).

*MCM*, app. 23 at A23-16. Article 120b, UCMJ, was a new paragraph based on the National Defense Authorization Act for Fiscal Year 2012. *Id.* The changes in Article 120, UCMJ, "were recommended by the Joint Services Committee on Military Justice and the Secretary of Defense to address deficiencies in existing law . . . identified by military courts and . . . addressed in the report of the Defense Task Force on Sexual Assault in the Military of December 2009." S. REP. NO. 112-26, at 115 (2011). The referenced report provided:

> In May 2001, the Cox Commission recommended the Department of Defense repeal the UCMJ rape and sodomy provisions and the offenses specified under the General Article 134 regarding criminal sexual misconduct. The Commission also recommended the Department of Defense propose a comprehensive criminal sexual conduct article. In October 2004, the National Defense Authorization Act for Fiscal Year 2005 required the Secretary of Defense to review the UCMJ and *Manual for Courts-Martial* to determine changes needed to conform the UCMJ sexual assault offenses to federal provisions. The new comprehensive sexual misconduct article became effective for offenses committed on and after October 1, 2007.

U.S. Dep't of Def., *Report of the Defense Task Force on Sexual Assault in the Military Services*, 80–81 (2009) (footnote omitted).

This same report, when discussing the amendments to Article 120, UCMJ, pursuant to the National Defense Authorization Act for Fiscal Year 2006 explains that "Congress amended and consolidated numerous punitive articles into Article 120, UCMJ, for offenses occurring on and after October 1, 2007." *Id.* at app. H-2. The footnote explains that the comprehensive Article 120, UCMJ, "included the former Article 134, UCMJ offense of communicating indecent language in the presence of a child." *Id.* at app. H-2, n.207.

We conclude from our review of the legislative history that Congress intended for Article 120b, UCMJ, to be a comprehensive statute to address sexual misconduct with children. Thus, both prongs of the preemption doctrine for clause 1 and 2 offenses are met.

### B. Preemption Doctrine for Clause 3 Offenses

With respect to clause 3, which allows assimilation of state law under the federal Assimilative Crimes Act for conduct not otherwise made punishable by any enactment of Congress, the analysis is much less dependent on the precise elements of the respective offenses than the Government argues. In regards to clause 3 preemption application, the Government is foreclosed from using the Assimilative Crimes Act with Article 134, UCMJ, if another federal statute generally seeks to punish the same wrongful behavior as the state statute. We find the reasoning of our Army colleagues highly persuasive:

> When analyzing whether a state law is preempted and not subject to incorporation or whether that state law can be applied on federal enclaves via assimilation, the Supreme Court expressly rejected a strict elements or "precise acts" test. *Lewis v. United States*, 523 U.S. 155 (1998). Instead, the high court reasoned, "it seems fairly obvious that the [federal Assimilative Crimes Act] will not apply where both state and federal statutes seek to punish approximately the same wrongful behavior . . . ." *Id.* at 165.

*United States v. Rodriguez*, Army 20130577, unpub. op. at 3–4 (Army Ct. Crim. App. 7 March 2016) (brackets in original).

In addition to the overlap addressed above between the South Carolina law and Article 120b, UCMJ, the Government fails to distinguish how the South Carolina law materially differs from 18 U.S.C. § 2422(b). Attempt convictions for violations of this federal law have been upheld for those who use the Internet to persuade, entice, or induce those they believe to be under 18 years of age, even when the individual with whom they are engaging in electronic communications is in fact an adult law enforcement agent. *See United States v. Nagel*, 559 F.3d 756, 764 (7th Cir. 2009) ("It is clear that Congress contemplated a mandatory minimum sentence whether there is an actual minor involved or not."). For this reason, the clause 3 portion of this offense fails.

### C. Additional Recent Preemption Case Law

The conclusion that the preemption doctrine forecloses the assimilation of state laws broadly aimed at punishing sexual misconduct with minors is consistent with our prior decisions and those of the Army Court of Criminal Appeals. The Army Court of Criminal Appeals decided that the preemption doctrine required them to set aside six specifications of wrongfully annoying and molesting a minor in violation of California Penal Code § 647.6(a)(1) that were charged as a violation of Article 134, UCMJ, clause 3. *Rodriguez*, unpub. op. at 2. We have earlier upheld a military judge's preemption doctrine dismissal of specifications for using a computer communication system to importune a person under

18 years of age to engage in sexual contact and providing a sexually oriented image to a person under 18 years of age in violation of Mississippi state law under clause 2 of Article 134, UCMJ. *United States v. Long*, Misc. Dkt. No. 2014-02 (A.F. Ct. Crim. App. 2 July 2014).

We distinguish two other unpublished decisions that recently addressed the preemption doctrine. We have upheld a specification alleging indecent conduct under Article 134, UCMJ. *United States v. Feldkamp*, ACM 38493 (A.F. Ct. Crim. App. 1 May 2015) (unpub. op.). We distinguished that case from *Long* explaining,

> The government did not charge the appellant with indecent conduct under Article 134, UCMJ, to broaden an existing enumerated offense; rather, it charged the appellant with an act under Article 134, UCMJ, that is not an offense at all under the enumerated articles, and in so doing, took upon itself the burden of proving additional elements not contained within any offense under Article 120, UCMJ, or Article 128, UCMJ."

*Id.* at 14, n.7.

Similarly we distinguish another of our recent preemption doctrine cases where we upheld an Article 134, UCMJ, offense for enticing a minor to engage in lewd acts for the purpose of producing a visual depiction of the acts. *United States v. Hill*, ACM 38848, unpub. op. at 2–4 (A.F. Ct. Crim. App. 9 May 2016). We determined that the elements of the charged Article 134, UCMJ, offense did not constitute a residuum of the elements of sexual abuse of a child under Article 120b(c), UCMJ. *Id.* at 3–4. The Article 134, UCMJ, offense in *Hill* was essentially an enticement to have the minor produce child pornography. We also rejected the appellant's argument that the preemption doctrine barred his prosecution unless he was charged for the listed offense of producing child pornography in violation of paragraph 68b of Article 134, UCMJ. *Id.* at 4. Even before it was a listed Article 134, UCMJ, offense, military case law had distinguished child pornography offenses under Article 134, UCMJ, as distinct from the underlying conduct that occurs with the minor. *See United States v. Nerad*, ACM 36994 (rem), unpub. op. at 3 (A.F. Ct. Crim. App. 9 March 2011) (affirming a finding of guilty to a violation of Article 134, UCMJ, for possessing child pornography when "the appellant was in the unique position of having a relationship with someone he could legally see naked and, but for his existing marriage, legally have sexual intercourse with, but could not legally possess nude pictures of her, several of which she took and sent to him"), *vacated on other grounds*, 70 M.J. 356 (C.A.A.F. 2011). The changes to Article 120b, UCMJ, have not incorporated the listed Article 134, UCMJ, offense of child pornography. Therefore, the preemption doctrine does not apply to Article 134, UCMJ, child pornography specifications.

## D.  Preemption Conclusion

Similar to *Long* and *Rodriquez*, we conclude the preemption doctrine barred the prosecution of this state law under clauses 1, 2, and 3 of Article 134, UCMJ, that was already addressed by Congress under Article 120b, UCMJ.  Charge II and its specification are set aside and dismissed.

## II.  Sentence Reassessment

This court has "broad discretion" when reassessing sentences.  *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013).  Our superior court has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).  This analysis is based on a totality of the circumstances with the following as illustrative factors:  dramatic changes in the penalty landscape and exposure, the forum, whether the remaining offenses capture the gravamen of the criminal conduct, whether significant or aggravating circumstances remain admissible and relevant, and whether the remaining offenses are the type that we as appellate judges have experience and familiarity with to reliably determine what sentence would have been imposed at trial.  *Winckelmann*, 73 M.J. at 15–16.

Applying these factors to this case, we are confident that reassessment is appropriate.  The military judge merged the two charges for sentencing; therefore, there is no change to the penalty landscape.  The remaining offense of attempted sexual assault of a child captures the gravamen of the criminal conduct.  All of the evidence of Appellant's communications with "Danielle" would still have been admissible.  We have familiarity with determining appropriate sentences for the remaining offense. We determine that absent any error the adjudged sentence would have been no less than the previously adjudged and approved sentence of a dishonorable discharge, confinement for 2 years and 6 months, forfeiture of all pay and allowances, and reduction to E-1.  This reassessed sentence is free of any prejudicial effects of the error.

## III.  Delay in Post-Trial Processing

In this case, action was completed on 21 July 2015, and the record of trial was docketed with this court on 25 August 2015.  Appellant has identified no specific prejudice from this delay.  Nevertheless, Appellant asks this court for day-for-day credit for the time of the delay against his sentence to confinement.

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions."  *Id.* at 135.  We review de novo whether an appellant has been denied the due process right to speedy post-trial review and whether any constitutional

error is harmless beyond a reasonable doubt. *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). In *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006), our superior court established guidelines that trigger a presumption of unreasonable delay in post-trial processing and appellate review. A presumption of unreasonable delay exists where the record of trial is not docketed with our court within 30 days of action. *Id.* A facially unreasonable delay will trigger an analysis that requires us to balance the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), and adopted in *Moreno*, 63 M.J. at 135. Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005) (citing *Barker*, 407 U.S. at 530). When there is no showing of prejudice under the fourth *Barker* factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Appellant has identified no specific prejudice from the delay in question, and we find none. Having considered the totality of the circumstances and the entire record, when we balance the other three factors, we find the post-trial delay in this case not so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system. We are convinced the error is harmless beyond a reasonable doubt.

## IV. Tardif Relief

Even though we have concluded that the error was harmless beyond a reasonable doubt, Article 66(c), UCMJ, 10 U.S.C. § 866(c), empowers the appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 24–25 (C.A.A.F. 2006).

This court set out a non-exhaustive list of factors we consider when evaluating the appropriateness of *Tardif* relief in *United States v. Bischoff*, 74 M.J. 664, 672 (A.F. Ct. Crim. App. 2015). *See also United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016) (articulating factors specifically tailored to answer the question of whether *Tardif* relief is appropriate). The factors include the length and reasons for the delay, the length and complexity of the record, the offenses involved, and evidence of bad faith or gross negligence in the post-trial process.

The record of trial in this case is relatively short and not complex—2 volumes with 105 pages of transcript, 9 appellate exhibits, 5 prosecution exhibits, and 18 defense exhibits.

In *United States v. Sutton*, we exercised our broad authority under Article 66(c), UCMJ, to grant the appellant *Tardif* relief when the government failed to meet the 30-day standard for forwarding the record of trial for appellate review. We noted that this 30-day standard was not "particularly onerous." *Sutton*, ACM S32143, unpub. op. at 9 (A.F. Ct. Crim. App. 21 August 2014). The forwarding record of trial likewise "involves no discretion or judgment; and . . . involves no complex legal or factual issues or weighing of policy considerations." *Id.* (quoting *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990)). While the delay in this case is no more excusable than the delay in *Sutton*, the length of the total elapsed time is different.

We also consider the explanation provided by the Government. Action was completed on 21 July 2015, and a single copy of the record of trial was forwarded on 3 August 2015. This was less than the required number of copies. Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 9.8 (6 June 2013); Air Force Manual 51-203, *Records of Trial*, ¶¶ 3.1, 13.1 (17 November 2009). This discrepancy was discussed at the Ninth Air Force military justice meeting on 11 August 2015. The required additional copies were mailed on 21 August 2015, and the record was docketed with our court on 25 August 2015. The Government does not provide any explanation for the 10 days between when the discrepancy was noted and then corrected. While the forwarding of the record was not exemplary, neither does it indicate bad faith or gross negligence.

Additionally, we have considered the facts and circumstances of Appellant's offenses and the entire record of trial to include all the facts regarding the post-trial processing. We conclude that sentence relief under Article 66(c), UCMJ, is not warranted.

## V. Sentence Severity

Appellant also challenges the severity of his sentence, in particular the sentence to confinement when combined with the punitive discharge. This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We may "affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson,* 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

In evaluating the sentence in this case we find the sentence to be correct in law and fact based on the entire record. Appellant believed he was communicating with a 14-year-old girl who was home alone because her mother was at work; he acknowledged that he was too old for her yet persisted in his objectives of planning to engage in "naughty fun"

with her. Within two hours of their conversation beginning, Appellant was on his way to base housing for his intended illicit activities with a child whom he had told not to shower because she would get a little dirty with him. After reviewing the entire record and giving individualized consideration to the nature and seriousness of the offenses and the character of the offender, we are convinced the sentence is appropriate. *See United States v. Snelling,* 14 M.J. 267, 268 (C.M.A. 1982).

*Conclusion*

The findings of guilty of Charge II and its specification are set aside; Charge II and its specification are dismissed. The findings of guilty of Charge I and its specification are affirmed. We affirm the reassessed sentence of a dishonorable discharge, confinement for 2 years and 6 months, forfeiture of all pay and allowances, and reduction to E-1. The findings, as modified, and the sentence, as reassessed, are correct in law and fact, and no error remains that is materially prejudicial to the substantial rights of Appellant. Articles 59(a) and 66(c), UCMJ. Accordingly, the findings, as modified, and sentence, as reassessed, are **AFFIRMED**.

ALLRED, Chief Judge, dissenting:

I agree with the majority's view of the legal standard. The preemption doctrine applies only when Congress has indicated "through direct legislative language or express legislative history that particular actions or facts are limited to the express language of an enumerated article, and may not be charged under Article 134, UCMJ." *Anderson*, 68 M.J. at 387. I do not agree that such plain intent is present here.

Let us first be clear about the specific offense addressed by this assignment of error. The charge before us is not directed at those instances where an adult visits a location intending to engage a child in sexual activity, then discovers his intended victim to be a law enforcement agent. Such was the conduct at issue in Charge I of this case—and it is not contested now. It is also the conduct that occurred in *Barraza* and *Colon*, the Navy-Marine Corps Court of Criminal Appeals (CCA) cases relied upon by the majority. *See Barraza*, unpub. op. at 3; *Colon*, unpub. op. at 2. I have no difficulty agreeing with our sister service CCA that the behavior in those cases amounted to an attempted crime under Articles 80 and 120b, UCMJ—and the preemption doctrine precluded charging under Article 134, UCMJ.

The situation here, however, is different. The thrust of the South Carolina statute—assimilated by Article 134, UCMJ, in Charge II—is the particular harm that occurs at that moment when an adult uses electronic or other means to entice a child to engage in sexual activity. The offense now at issue occurred when Appellant contacted a person he believed to be a 14-year-old girl with the intent of inducing "her" to engage in sex—independent of

any indecent conduct or indecent language on his part, and independent of his going to the house of his intended victim. In my opinion, this "particular action[]" is worthy of criminalization, but has not been addressed in the UCMJ, either through "direct legislative language" or otherwise. *See Anderson*, 68 M.J. at 387.

Certainly, the required clear intent of Congress is not obvious to practitioners in the field. One can hardly doubt that Appellant was in this instance charged under Article 134, UCMJ—and indeed pleaded guilty as charged—precisely because it was clear neither to the Government nor to the Defense that Articles 80 and 120b, UCMJ, occupied the landscape for type of misconduct at issue here.

Under these circumstances, I would affirm the conviction.

FOR THE COURT

LAQUITTA J. SMITH
Appellate Paralegal Specialist